**Vernon McFATRIDGE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–79–26.**

Court of Criminal Appeals of Oklahoma.

July 30, 1981.

Frank R. Courbois, Fred L. Staggs, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The appellant was convicted of Unlawful Possession of Marijuana With Intent to Distribute in the District Court of Oklahoma County, Case No. CRF–77–4012. His pun-

ishment was fixed at six (6) years' imprisonment, with the last year to be suspended.

The conviction stems from an incident on August 30, 1977, when a repairman went to a residence leased by Debbie and Vernon McFatridge to do some electrical wiring for these new tenants. While in the attic he observed a fan and heat lamp, both turned on and directed toward a box of green leafy substance. Upon further seeing scales in the attic, the repairman notified the police. When a search warrant was served upon the appellant, the police officers confiscated approximately twenty-five (25) pounds of marijuana from the attic. Thereafter, the officers were led to a bedroom where the appellant uncovered a box containing 17 baggies of marijuana. He was then given the *Miranda* warnings and arrested.

I

Three propositions are advanced by the appellant in his first assignment of error.

A

Initially he argues that there was not impaneled a fair and impartial jury due to the unavailability of a court reporter during a portion of the *voir dire* examination. An affidavit of Mr. David N. O'Brien, filed in support of the appellant's motion for a new trial stated:

The second juror from the right, on the front row expressed strong feelings about the constitutionality and general wisdom of the marijuana laws. At this point the Court excused the juror for cause and inquired of the other jurors if they could assess [sic] jail time on the charge before the Court. Several jurors raised their hands and the Court began inquiry of the third juror from the right, on the front row. That juror expressed his opinion that people should not be imprisoned by offenses involving marijuana and the Court announced that he would excuse that juror also. Prior to the juror being excused, counsel for the defendant, Mr. Frank R. Courbois, announced to the Court that he desired the presence of the Court reporter to record the statements

of the juror and the Court. To this the Court responded that there was no need to have the statements of the juror and that the juror would be excused. At this point the juror was still in the jury box standing in front of his chair. The Court then began examination of another juror who had raised his hand, prior to the entry of the Court reporter into position to take notes of the proceedings and prior to the other juror leaving the jury box. Counsel for the defendant was attempting to ask the juror to state his responses to the Court into the record but the Court reporter had not yet begun to take notes and the Court directed the juror to leave without his statements being recorded.

To Further bolster his position, the appellant relies on 20 O.S.Supp.1972, § 106.4,[1] and a number of cases—only one of which appears relevant, *Spicer v. State*, 490 P.2d 1113 (Okl.Cr.1971). There we reversed the conviction because the trial court refused the defendant's request for a court reporter. In the present case, however, a court reporter was provided for the remaining *voir dire* after objection was raised. No court reporter was available during any of the *voir dire* in *Spicer*. The remaining citations of authority proffered by the appellant are distinguishable as concerning recordation of closing arguments.

We question the propriety of dispensing with a record of *voir dire*. In many instances, it is not ancillary to the trial. For protection of the records, it is preferable that the court reporter record all of the *voir dire* examination. Moreover, diligent defense counsel should insure that these proceedings be recorded. However, under the facts presented in this case, we cannot hold that there was a denial of due process.

The appellant has failed to demonstrate that any irregularity in the impaneling of jurors has injuriously affected the final jury panel. Because he waited until the second prospective juror was excused before requesting a court reporter, the appellant's request was not timely. He thereby waived any right to the presence of a court reporter from the inception of *voir dire*. See *Higgins v. State*, 506 P.2d 575 (Okl.Cr.1973), which held that 20 O.S.Supp.1972, § 106.4, *supra*, does not mandate the taking down of all testimony in all instances. We find no error.

**B**

■ Several jurors were excused for cause after expressing an inability to vote for imprisonment if the appellant was found guilty. The appellant claims this further prejudiced his right to a fair and impartial trial.

The substance of the appellant's claim is that the jury should have been instructed that a simple possession conviction could carry no punishment whatsoever. The State counters this argument by reference to 63 O.S.Supp.1975, § 2–402(B)(2). That statute provides the punishment for possession of marijuana, second and subsequent offense, shall be not less than two (2) nor more than ten (10) years.

We find that the argument that the jury panel was prejudiced by the trial court's *voir dire* examination is untenable. Each juror under oath agreed to weigh the evidence and give both sides a fair trial.

In *Lewis v. State*, 586 P.2d 81 (Okl.Cr. 1978), this Court said at page 82:

It is well settled in Oklahoma that a defendant has no vested right to have a particular juror out of a panel. His right is that of objection rather than that of selection. And if the trial court is of the opinion that any juror is not fair or impartial or is for any reason unqualified, he may excuse the juror either upon challenge of one of the parties or upon his

---

1. Title 20 O.S.Supp.1972, § 106.4 provides in pertinent part:

... A refusal of the court to permit or to require any statement to be taken down by the court reporter or transcribed after being taken down, upon the same being shown by affidavit or other direct and competent evidence, to the Supreme Court, or other appellate court, shall constitute a denial of due process of law.... A trial or proceedings may proceed without the necessity of a court reporter being present unless there is objection by a party or counsel....

own motion without challenge. Whether or not a juror should be excused rests in the sound discretion of the trial court, and unless such discretion is abused there is no error. See, *Bickerstaff v. State*, Okl.Cr., 446 P.2d 73 (1968).

We find no abuse of discretion.

### C

■ The appellant maintains that he was erroneously denied personal *voir dire* examination of the jurors qualifications when the trial court usurped that function. He concedes that no constitutional or statutory provision in this State expressly mandates personal *voir dire* by the accused or his counsel.

Defense counsel's objection to the procedure was overruled. However, his request for time to submit written questions to the trial judge was granted. The appellant entered further objection to the procedure, exercised all of his peremptory challenges, and moved to quash the jury panel.

In his brief the appellant recognizes that *voir dire* examination of jurors qualifications cannot be prescribed by any definite, unyielding rule. Rather, the manner and extent of examination rests largely in the sound discretion of the trial judge. *Vardeman v. State*, 54 Okl.Cr. 329, 20 P.2d 194 (1933). We said in that case at page 195:

> After the court has asked jurors as to their legal qualifications, it is hardly necessary for the state or defendant's counsel to ask them the same questions, although sometimes this is done. When any part of the questioning is denied or excluded, in order to preserve the question the proper procedure for defendant's counsel is to dictate into the record the questions he desires to ask the jurors, and obtain a ruling of the court thereon, thereby enabling this Court to determine if the trial court abused its discretion in refusing to permit counsel to ask the questions....

■ The appellant failed to make a record of any specific questions which were denied. From our review, we find no abuse of judicial discretion in connection with the *voir dire* examination. The trial judge's effort to dispatch the business before the court is commendable. There is no affirmative showing that any of the jurors were in any respect disqualified or in any manner prejudiced.

According to the trial judge, the *voir dire* questions contained the substance of the appellant's inquiries and were sufficient to test the juror's impartiality. The rule is well settled that the extent to which *voir dire* may be pursued is discretionary with the trial court, whose ruling will not be disturbed absent a clear case of abuse. *Palmer v. State*, 532 P.2d 85 (Okl.Cr.1975).

### II

Confronting us next is the adequacy of the search warrant. The appellant claims the following affidavit upon which the warrant was based was inadequate because it failed to establish probable cause that the substance seized was in fact marijuana:

> ... that Mr. PAUL VANDERBERG, 7030 N.W. 16th, a good and lawful citizen of Oklahoma City, and doing business as a home repairman for the manager of 2012 Hasley, who has no police record of a felony conviction was doing home repair work on this residence on 8–30–77. While at this residence on two different occasions, observed a large "tissue paper" box in the attic above the garage with a considerable amount of green, leafy substance being dried with a heat lamp and an electric fan, believed to be marihuana [sic], a controlled dangerous substance. Mr. VANDERBURG contacted the Village Police on 8–30–77 at approximately 7:15 p. m. and advised them he wished to testify to what he had seen. Mr. VANDERBURG saw this contraband between the hours of 10:30 a. m. and 12:00 p. m., 8–30–77, and again on 8–30–77 between of [sic] 2:30 p. m. and 5:30 p. m.

■ Standards for the determination of the constitutional sufficiency of an affidavit for a search warrant were promulgated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The affidavit must inform the issuing magistrate of some of the underlying circumstances from which

the informant concluded that a crime was occurring at the situs of the proposed search. However, when as here the affidavit is based upon specific factual information given by a named and known informant details reflecting his reliability and the credibility of his information are unnecessary. *Wright v. State*, 552 P.2d 1157 (Okl.Cr.1976). Notwithstanding this rule, the affidavit shows that the informant, Mr. Vanderburg, a repairman, was a good citizen with no felony record. Based upon the totality of the circumstances, we are of the opinion that the magistrate had probable cause to issue the search warrant. *Bishop v. State*, 605 P.2d 260 (Okl.Cr.1979).

### III

Two separate arguments are made in the penultimate proposition of error, the first being the insufficiency of the evidence to show knowledge, dominion and control over the marijuana. It is well settled that when one is present where marijuana is found but does not have exclusive possession of the premises, knowledge and control of the drug may not be inferred unless shown by additional, independent factors. *Riggs v. State*, 486 P.2d 643 (Okl.Cr.1971).

■ Admittedly, there was evidence of access to the residence by the appellant's wife, carpet layers, and a prior tenant, who had not returned his key to the manager. However, while refuted by the appellant, Officer Rossi testified to the appellant's statements upon arrest, "I'm drying a little pot, but it is not mine. It belongs to a friend of mine. We are just drying it for him." Large scales belonging to the appellant and commonly used for the weight,

measuring and cutting of marijuana were also found on the premises. These factors, coupled with the quantity of drugs further support the charge of intent to distribute.

■ We also note the appellant's polytypic argument that the State failed to establish whether the green leafy substance was sativa L., ruderellis or indica species of marijuana. Dispositive of this assertion is *Winters v. State*, 545 P.2d 786 (Okl.Cr.1976), where it was held that a multiple species defense is not available under Oklahoma law.

■ Claim is made that the substitution of trial court's Instruction No. 6 for the appellant's requested Instruction No. 7 resulted in a failure to instruct the jury on the dominion and control requirement for drug possession.[2] It is not error to refuse requested instructions when they are substantially covered by the court's instructions. *Hutson v. State*, 550 P.2d 969 (Okl. Cr.1976). When considered as a whole, the instructions given correctly state the applicable law and were sufficient. *Green v. State*, 611 P.2d 262 (Okl.Cr.1980).

### IV

■ Rejection must also be made of the appellant's claim that he was denied the right to a speedy trial due to a ten (10) month delay. Additionally, he contends this delay caused him to lose the benefit of a material witness who moved out-of-state and was impossible to contact prior to trial.

Both sides agree on the time frame of events. The original charges were filed August 31, 1977, but dismissed for failure to

---

2. The court's Instruction No. 6 provided:

> It is one of defendant's defenses that although the marihuana [sic] was present at the residence, which he had just rented, he did not own it and it belonged to some other person.
> You are instructed that Possession of Marihuana, [sic] with knowledge that it is marihuana, [sic] constitutes 'possession' within the definitions given you in these instructions, and would not be a defense to the charge of Possession but, if he discovered the marihuana [sic] in the house immediately prior to the arrival of the police officers it might go to mitigation of punishment; and may be

considered by you on the issues of whether the defendant had Possession of Marihuana [sic] With Intent to Distribute.

The appellant's requested Instruction No. 7 provided:

> It is the defendant's theory of defense that although the marihuana [sic] was present at the residence he had just rented it was marihuana [sic] that he did not own nor have guilty knowledge of its presence until shortly before the arrival of the police officers and that therefore he did not possess it within the meaning of the statutes of the State of Oklahoma.

prosecute on November 2, 1977. On November 9, 1977, the case was refiled under No. CRF–77–4012. The appellant was arrested and arraigned under the new information on March 15, 1978. A preliminary hearing was held May 31, 1978, and the trial commenced on June 27, 1978.

Two cases are relied on by the appellant: *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) and *State ex rel Trusty v. Graham*, 525 P.2d 1231 (Okl.Cr. 1974). The latter case cites *Barker v. Wingo* for the guidelines which courts should consider in determining whether a defendant's right to a speedy trial has been infringed: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the accused. These factors are not absolute. This determination can only be made on an individual basis in which conduct of the prosecution and the defendant are weighed and balanced. *Anderson v. State*, 556 P.2d 1006 (Okl.Cr.1976); *Jones v. State*, 595 P.2d 1344 (Okl.Cr.1979).

■ To refute the appellant's contentions the State responds by citing *U. S. v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1977). The court there held that the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an accused. Accordingly, the appellant was not protected until March 15, 1978, when he was arrested and charges were refiled, following the earlier dismissal.[3] Trial began on June 27, 1978.

■ Considering the length of delay and the reasons therefor, the State points out that one of its witnesses had infectious hepatitis resulting in the dismissal for failure to prosecute. The record further reflects testimony by prosecutor Ed Gary that defense counsel herein asked him not to refile the case for a while. To some extent the appellant acquiesced in the delay.

As indicated in *Smith v. U. S.*, 260 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 (1959), the essential consideration is "orderly expe-

dition and not mere speed." When the above factors are considered, we find no prejudice to the appellant from the delay.

The judgment and sentence is, therefore, AFFIRMED.

BRETT, P. J., and BUSSEY, J., concur.

---

**3.** Pursuant to *State v. Edens*, 565 P.2d 51 (Okl. Cr.1977), a person is not an "accused" for the purpose of state and federal constitutional speedy trial provisions until an information or indictment is filed or until the person is in actual custody or has been arrested for the offense in question.