Billy Ray FOX, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–86–511.

Court of Criminal Appeals of Oklahoma.

Aug. 30, 1989.

Rehearing Denied Oct. 2, 1989.

**564**

Robert Ravitz, Oklahoma County Public Defender, Opio Toure, Pete Gelvin, Asst. Public Defenders, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., Susan Stewart Dickerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Billy Ray Fox, appellant, was convicted in Oklahoma County District Court of three counts of Murder in the First Degree while in the commission of Robbery with a Dangerous Weapon, pursuant to the felony-murder doctrine codified at 21 O.S.1981, § 701.7(B). He was tried before a jury and punishment was set at death on each count. The trial court sentenced him accordingly.

Between 3:15 a.m. and 3:53 a.m. on the morning of July 3, 1985, three employees of the Wynn's I.G.A. grocery store in Edmond, Oklahoma, were murdered while on duty. Cash in the amount of $1,200.00 and checks totalling $1,500.00 were taken from the store. The three employees were killed in the back room of the store. Two of them, Rick Cast and Chumpon Chaowasin, died from single gunshot wounds to their heads. The third, John Barrier, died from being stabbed numerous times in the neck, chest, back and side, as well as from being bludgeoned on the back of his head with a shotgun.

At approximately 2:30 a.m. on July 3, 1985, Fox and his codefendant, Mark Fowler, had gone to the bedrooms of Fox's two roommates and asked to borrow a shotgun from each. When Fox returned home later that morning, he confessed to one roommate that he had killed some people. Afterwards, as a news broadcast of the killings appeared on the television, Fox admitted that that was what he had done.

Both defendants were arrested on the evening of July 3. Appellant was arrested as he approached his pickup, the same vehicle in which he had traveled to and from the grocery store. When two police officers appeared, appellant handed a companion a wad of cash. In the bed of the truck, the police found bloody splinters from the broken stock of a shotgun, together with the gun's forestock and two shell casings. The following morning, Fox made a statement to police detectives and led them to a white purse which contained some checks that had been taken from the IGA during the robbery. He also told the officers where in his home they could find a knife that he had hidden. The knife later proved to be consistent with the cause of Barrier's wounds. The barrel of the shotgun was found in some debris in Fox's yard.

Both Fox and Fowler admitted to police officers that they had gone to the grocery store to commit the robbery, but each denied committing or participating in the homicides.

## I

Appellant's first assignment of error is that he was denied a fair trial through the systematic exclusion of "minorities" from the jury. He summarizes this contention by asserting "[t]he trial court committed reversible error by refusing to allow appellant an opportunity to produce the 'records' of the jury panel, the number of minorities in the panel on May 5, 1986." To the motion, appellant's counsel attached the affidavit of another attorney practicing in Oklahoma County stating that while "minorities" constituted seventeen percent of the population of the county, he believed that they represented only five percent of those called for jury duty. Defense counsel requested that the jury clerk be ordered to count the number of people who appeared for jury duty who physically appeared to represent a minority. The trial court denied the request. For the following reasons, we do not agree that appellant was denied a fair trial by the systematic exclusion of minorities or that the trial court erred by not requiring a count of apparent minorities.

■ The United States Supreme Court held in *Hernandez v. Texas*, 347 U.S. 475, 477, 74 S.Ct. 667, 670, 98 L.Ed. 866 (1954), that "it is a denial of the equal protection of the laws to try a defendant of a particular race or color under an indictment issued by a grand jury.... from which all persons of his race or color have, solely because of that race or color, been excluded by the State...." When a defendant asserts this form of denial of equal protection, he must show that the procedures used to call his jury "resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs. The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or applied." *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977) (citing *Hernandez*).

■ "Minorities" is not a recognizable, distinct class. Appellant does assert that he is half Asian, his mother being Polynesian/Hawaiian. However, we cannot say that even this group is a recognizable, distinct class which could be singled out for different treatment in Oklahoma County. According to the 1980 U.S. Census, Asians constituted .99 percent of its population. The group to which appellant belongs is not sufficiently numerous to form a distinct class. Because the appellant failed to reach the first step in establishing systematic exclusion of his group, the trial court was under no obligation to provide appellant the "records" of the jury panel.

At the hearing on appellant's pretrial motion, the Oklahoma County Election Secretary was called to testify as to the procedures utilized in registering voters in the county. The local jury clerk also described how names of all registered voters in the county were entered into a computer and then randomly withdrawn for petit juries. It was clear that the procedure set forth in the Oklahoma Statutes for calling jurors, 38 O.S.Supp.1985, § 18, was followed and that it was racially neutral and not susceptible to abuse. The method qualified any registered voter to be called as a grand or petit juror. Thus, had appellant made a prima facie case of discriminatory purpose by showing substantial underrepresentation of his group, the State would have easily rebutted it. *Castaneda*, 430 U.S. at 494, 97 S.Ct. at 1280. Accordingly, this assignment of error is without merit.

## II

■ Appellant's second assignment of error is that he was denied a jury representing a fair cross section of the community because 38 O.S.1981, § 28(A), allows jurors seventy years of age or above to opt out of jury service. We have previously discussed this issue and are unpersuaded to change our holding that this exemption from jury service does not exclude a sufficiently numerous and distinct group. *Moore v. State*, 736 P.2d 161, 165 (Okla. Crim.App.1987), *cert. denied*, — U.S. —, 108 S.Ct. 212, 98 L.Ed.2d 163 (1987). Appellant did not demonstrate that representation of this group in venires is not fair and reasonable in relation to the number of such people in the community. *Id.* Fur-

thermore, we find the exemption to be reasonable in light of the increasing rate of physical infirmities incurred by senior citizens and the resulting hardships if lengthy jury service is required. The Supreme Court held in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), that the fair cross section principle must offer much leeway and allow for relevant qualifications for jurors as well as reasonable exemptions.[1]

### III

■ Appellant urged in a pretrial motion for change of venue that he could not receive a fair trial in Oklahoma County due to extensive pretrial publicity. He contends that the voir dire examination at trial showed that it was impossible for a truly fair and impartial jury to be seated in his case. We disagree with this conclusion.

While it is true that most of the venire had read or heard media accounts of the robbery/homicides, none of those serving on appellant's jury had formulated an opinion of his guilt or innocence. In fact, during voir dire, the one individual that had formed an opinion was excused for cause. Another had heard in the media that each codefendant had placed the blame for the homicides on the other, and was also excused for cause.

The trial judge voir dired at the bench and out of hearing of the others, each venireman who had learned of the case from the media. Thus, he carefully prevented the venire from being contaminated by information others had acquired from the media while at the same time allowing each venireman to disclose his or her own knowledge and opinion. We are satisfied that this procedure adequately allowed thorough inquiry into the veniremen's knowledge and opinions acquired from media accounts and ensured that those who sat on the jury could impartially and fairly judge appellant on the evidence presented at trial. *See Irvin v. Dowd*, 366 U.S. 717,

81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Walker v. State*, 723 P.2d 273, 278 (Okla.Crim.App. 1986); *Moore v. State*, 672 P.2d 1175, 1177 (Okla.Crim.App.1983).

We cannot say on the record before this Court that the jury that tried the appellant was unfairly prejudiced against him because of the media coverage of his case or that there was a deep pattern of prejudice throughout the community. *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). This assignment is without merit.

### IV

■ Appellant next asserts that the trial court committed reversible error in not severing his trial from his codefendant's trial because of their mutually antagonistic defenses. He claims that their defenses pitted them against one another because each sought to blame the homicides on the other.

In statements made to the police, each defendant acknowledged planning and participating in the robbery, but stated that he had no part in and never envisioned violence toward the victims. However, neither defendant testified at trial and the only portions of their redacted statements introduced at trial were their admissions of going to the grocery store and robbing it. Therefore, the issue before us is not whether there are disagreements between the defendants concerning the facts, but whether the defenses are antagonistic in that each defendant is attempting to exculpate himself and inculpate his co-defendant.

During closing argument, accusatory remarks were made in attempts to show that Fox should bear greater responsibility for the murders than Fowler. However, the defendants were charged with first degree murder under the felony-murder statute because the victims died as a result of acts committed to further the commission of a felony, to-wit, robbery. An examination of the statements shows that both defendants

---

1. In *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the Supreme Court compared a statutory exemption from jury service of "women" with that of "persons over the age of 65" and expressed no concern with the latter as it affected the fair cross section principle.

inculpated themselves of felony-murder and whomever bears the greater responsibility is immaterial to the issue of guilt.

Thus, appellant has not demonstrated antagonistic defenses nor prejudice resulting from being tried with codefendant Fowler. *See Vowell v. State*, 728 P.2d 854, 857 (Okla.Crim.App.1986); *VanWoundenberg v. State*, 720 P.2d 328, 331 (Okla.Crim.App. 1986) *cert. denied*, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986); *Master v. State*, 702 P.2d 375, 378 (Okla.Crim.App. 1985). The trial court did not abuse its discretion in denying appellant's motion for severance.

**V**

■ Relying on this Court's holding in *Master v. State*, 702 P.2d 375, 379 (Okla. Crim.App.1985), the trial court found that the codefendants did not have inconsistent defenses which would prevent them from being required to join in exercising their nine peremptory challenges according to 22 O.S.1981, § 655. Appellant contends that since their defenses were antagonistic, his motion for additional peremptory challenges should have been granted and that he was denied a number of constitutional rights as a result.

In the previous assignment, we found that the codefendants did not present antagonistic defenses. For that reason, we cannot say that the trial court erred in refusing to grant additional challenges. Furthermore, we find *Master* to be controlling on this issue. Indeed, as the trial court noted, the language of the statute specifying the number of peremptory challenges is mandatory. Title 22 O.S.1981, § 655, states that "if two or more defendants are tried jointly they *shall* join in their challenges...." (emphasis added). As appellant points out in his brief, peremptory challenges are not constitutionally guaranteed and are subject to limitations in their exercise. *See Stilson v. United States*, 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154 (1919). The Court held in *Stilson* that the government may permissibly regulate the number of peremptory challenges available and may require codefendants to be treated as one defendant in exercising the allotted challenges.

As we have found no substantial inconsistencies, we find no violation of the statute in question nor of appellant's constitutional rights in requiring the codefendants to join in their peremptory challenges.

**VI**

Appellant next asserts that the trial court erred in not allowing individual voir dire of each juror, out of the hearing of the others, as to their views on capital punishment. We have previously addressed the trial court's discretion in considering such a request on several occasions and are unpersuaded of its usefulness in appellant's case. *See Vowell v. State*, 728 P.2d 854, 857 (Okla.Crim.App.1986); *Foster v. State*, 714 P.2d 1031, 1037 (Okla.Crim.App.1986) *cert. denied*, 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986). We have no reason to believe from the record that voir dire was unduly hampered. We note that of those questioned, three veniremen were excused for cause because of their opposition to the death penalty, and one was excused for cause due to being irrevocably committed to the death penalty.

**VII**

■ Appellant claims the trial court erred in excusing for cause two veniremen, Stutzman and Porter, because of their concern about the death penalty. When asked the following question, each answered, "No":

> If you find beyond a reasonable doubt that these defendants are guilty of murder in the first degree can you consider both legal punishments, life or death?

Further questioning by the trial judge elicited negative answers. Defense counsel requested and was granted the opportunity to further voir dire one venireman but was denied the opportunity on the other. Appellant claims that excusal of the veniremen violated his rights and that he was entitled to further voir dire. We disagree with both charges.

It was clear from the trial court's inquiries that the views of these two veniremen would have prevented or substantially impaired the performance of their duties as jurors in this case. This is sufficient ground to excuse a potential juror for cause in a capital case. *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). We have previously held that there is no right for counsel of either party to rehabilitate a venireman and have noted that protracted inquiry about capital punishment may tend to confuse the issue. *See Banks v. State*, 701 P.2d ·418, 423 (Okla.Crim.App.1985). We find no abuse of discretion.

■ Appellant also mentions in this assignment, without citation of authority, that the trial court erred in not allowing defense counsel to voir dire the veniremen about what circumstances they might view as mitigating. We do not consider this to be an abuse of the trial court's discretion in directing the manner and extent of voir dire. *See McFatridge v. State*, 632 P.2d 1226, 1229 (Okla.Crim.App.1981).

### VIII

■ As his eighth assignment of error, appellant contends that the trial court should not have allowed into evidence a statement made to police officers which had been elicited by improper custodial interrogation. Following his arrest on July 3, 1985, Fox was interrogated by Edmond police officers. He subsequently requested counsel on July 4, 1985, and all questioning ceased at that time. Later during the day of July 4, two homicide detectives went by to leave their business cards with appellant. He was brought out of his cell to a nearby interview room and the officers gave him their cards in case he or his attorney desired to contact the police. They advised him that they were not there to discuss his case. As the officers started to leave, Fox advised them that his case was not getting any better and that he wanted to talk to them. He made an incriminating statement which was tape recorded and thereafter led the detectives to a purse containing checks stolen during the robbery. Appellant also told them where to locate a knife used in the robbery and executed a search waiver. During an *in camera* hearing to determine the voluntariness of his statements, Fox testified that he did these things only after one of the detectives had assaulted him.

Appellant cites the case of *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), as authority for the assertion that the officers' giving of their business cards amounted to an interrogation after he had requested counsel, thereby violating his Fifth Amendment rights. *See also Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). However, we find the holding in *Innis* to support the opposite position. In that case, the defendant led the arresting police officers to the location of a murder weapon after overhearing a conversation between two of the officers expressing their concerns that handicapped children in the vicinity might find the weapon and hurt themselves with it. The court held therein that "interrogation" was not limited to express questioning, but included words and actions by police which the police should know are reasonably likely to elicit an incriminating response. 446 U.S. at 300–301, 100 S.Ct. at 1689. "The case thus boils down to whether, in the context of a brief conversation, the officers should have known that the respondent would suddenly be moved to make a self-incriminating response." *Id.* at 303, 100 S.Ct. at 1691. After a review of the record, we cannot say that appellant's statements and actions were the product of evocative conduct on the part of the officers.

### IX

■ After the trial had begun, appellant's counsel advised the trial court that they had received several telephone calls from an individual who claimed to be an informant on drug deals and who worked with certain law enforcement officers. The individual advised that on July 3, 1985, he had heard Mark Fowler claim that he, not Fox, had killed the victims during the robbery. This individual would not identify

himself but said he worked with an Officer Hill and an Officer Beck. Officer Hill was an endorsed witness at trial called by the State. No one knew for sure who Beck was because the only officer named Beck who worked for the Oklahoma City Police Department was a helicopter pilot, and was not assigned to narcotics.

At trial, Fox's attorney requested that Officer Hill be required to disclose the names and addresses of all his informants so that they might be called and asked if they were the one who had heard Fowler make this claim. The trial court did not require this because of the doubtful credibility of an anonymous caller, the danger to the informants working with Officer Hill, and because the District Attorney's office and Officer Hill did everything they could in helping defense counsel to identify the individual. Officer Hill called several informants and located only one who might have made the calls. Hill gave defense counsel the name and telephone number of this person, but after speaking with him, defense counsel did not believe he was the same person who had called earlier. Officer Hill also contacted an Officer Beck with the Drug Enforcement Administration to determine if he could identify the caller. Officer Beck could not. He knew of no informant that was acquainted with Fox or Fowler.

Appellant charges that the trial court should have granted a continuance of trial immediately before closing arguments began and ordered the police department to provide the names and addresses of all its informants to the court. The police department is privileged from disclosing the identity of confidential informants. 12 O.S. 1981, § 2510(A). Appellant's request is more far-fetched than requesting the name of a specific informant. He not only demanded the name of someone who never gave to the police the information he wanted, but he wanted the names of all their confidential informants involved with narcotics. The request was unfounded as far as legal authority is concerned and could have endangered the lives and welfare of a number of people. This assignment is without merit.

## X

Appellant next complains that the three photographs and a video tape which depicted the murder scene were unduly gruesome and that their prejudicial value outweighed their probative value. We disagree. The photographs were in black and white except for the one introduced during the blood splatter expert's testimony. That photograph showed the pattern of blood splattering and explained and corroborated the expert's testimony of the order and method of killing.

The other photograph was black and white and simply showed Barrier's body lying face down in a pool of blood. The third photograph complained of was of the doors leading to the back room of the store. On one door was a red spot which might have been blood.

The pictures and videotape were not unnecessarily descriptive of the details of the victims' injuries nor were they particularly gruesome. In fact, very little of the footage of the videotape was devoted to the scene of the victims' deaths. Most footage was taken in the front of the store. Those which did show the victim Barrier were properly admitted to corroborate expert testimony and to prove corpus delicti. *See Castro v. State,* 745 P.2d 394, 402 (Okla. Crim.App.1987); *DeVooght v. State,* 722 P.2d 705, 713 (Okla.Crim.App.1986); and, *Thompson v. State,* 711 P.2d 936, 937 (Okla.Crim.App.1985). There is no error.

## XI

In his next assignment appellant contends that three individuals who testified as expert witnesses at trial should not have been allowed to do so.

### A

The first witness of which appellant complains is Ned Stuart. Stuart was qualified by the trial court as an expert and testified of tests he conducted on the codefendants' clothing worn during the homicide and on the immediate area surround-

ing the death scene. Luminal tests were performed to detect the presence of blood on these surfaces. This process is used when blood is suspected as being present but is not visibly discernible. It simply involves a chemical reaction to the blood which causes the blood to luminesce. Positive results were obtained on most of the surfaces tested.

This Court has never approved or disapproved of expert testimony concerning Luminal testing. "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise." 12 O.S.1981, § 2702. In this case, the trial judge properly informed himself of the reliability of the tests used [2] and the expert's qualifications [3] and his precision in using the tests and decided that the testimony would assist the trier of fact. *Kennedy v. State*, 640 P.2d 971, 977 (Okla.Crim.App. 1982). We find no abuse of the trial court's discretion in admitting Ned Stuart's testimony.

**B**

The appellant contends that the testimony of Sergeant Tom Bevel, who qualified as a blood splatter expert, should not have been admitted because he based his conclusions partially on the luminal test results of Ned Stuart. This assignment is unmerited since we have found that Mr. Stuart was properly qualified to testify of the results of the luminal tests. Sergeant Bevel was properly qualified as a blood splatter expert, *Farris v. State*, 670 P.2d 995, 997 (Okla.Crim.App.1983), and was also present when Mr. Stuart performed the luminal tests.

**2.** Gaensslen, R.E., *Sourcebook in Forensic Serology, Immunology, and Biochemistry* (U.S. Govt. Printing Office Aug., 1983). The trial judge referred to the cited source and several others in informing himself of the reliability of the luminal tests.

**3.** Ned Stuart testified that he had been director of the regional crime lab in Coeur d' Alene,

**C**

As his final contention within this assignment, Fox claims that Joyce Gilchrist should not have been allowed to testify of her conclusion that, based upon the presence of hairs found on the victim Barrier, which were consistent with scalp hairs of Fox and Fowler, both defendants were in contact with the victim Barrier. Title 12 O.S.1981, § 2704 provides that in regard to experts, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Relying on this section of the evidence code, the trial judge allowed the testimony. Ms. Gilchrist was asked by the prosecutor whether she had an opinion with regard to her findings in the case and that is when she offered her aforementioned conclusion.

Ms. Gilchrist admitted that an individual could not be positively identified by hair evidence. However, she went on to testify that, "[in] her opinion ... Mark Fowler and Bill Fox were in contact with John Barrier prior to death." (Tr. 1581). The lack of scientific weight of such a conclusion is apparent on reflection by those dealing with similar evidence on a regular basis. But to a lay jury, usually ill-equipped to assimilate hair analysis findings on their own, such an opinion may appear too substantial. *Cf. McCarty v. State*, 765 P.2d 1215, 1219 (Okla.Crim.App.1988), wherein a majority of this Court held that expert opinion that a defendant was in fact present when violence was done to the victim was improper.

While opinion testimony of an expert is properly admissible, such a witness should not be encouraged by the prosecution or the defense to give imprecise

Idaho, for thirteen years at that time and coordinator of the School of Law Enforcement at North Idaho College for fifteen years. By education, training and experience, Mr. Stuart testified that he was a chemist and physicist and had twenty-eight hours of postgraduate study in police science. He also had 750 to 1000 hours of police science study in seminars.

conclusions. Had the imprecision of this conclusion not been exposed on cross-examination and by the testimony of the defense's expert, Samuel Palenik, error may have resulted.

This case is also much different from the expert testimony approved by this Court in *Kennedy v. State*, 640 P.2d 971 (Okla.Crim. App.1982). *Kennedy* was a case of first impression, wherein bite-mark evidence had been introduced at trial to identify Kennedy as the assailant of a woman who, before being strangled to death, had had her nipples gnawed from her breasts. The techniques used and details of the analysis made were extensively explained and visually demonstrated to the jury. Even at that, the experts identified Kennedy as the perpetrator only "within reasonable medical probability." The doctors readily explained the limitations of their ability to make identifications from bite-mark evidence and did not try to state their conclusions as absolutes. Although it is not feasible for experts on every occasion to be so comprehensive in their testimony, the accuracy demonstrated in *Kennedy* should be exemplified by all experts.

### XII

During the sentencing stage of trial, appellant presented fifty-four witnesses who testified that his life had meaning to them and who felt that he should be sentenced to life imprisonment rather than being given the death penalty. He also offered the affidavits to the same effect of five more people who were unable to be present to testify at his trial. The court held that there was no exception to the hearsay rule which would allow their admission. Fox contends that the trial court erred in refusing to admit this mitigating evidence.

■ While it is true that the hearsay rule should not be applied in a mechanistic fashion which would defeat the ends of justice, *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), the rules of evidence should, nonetheless, regulate the course of proceedings in the sentencing stage of a capital case. *Chaney v. State*, 612 P.2d 269 (Okla.Crim.App.1980), *mod-*

*ified on other grounds sub nom., Chaney v. Brown*, 730 F.2d 1334 (10th Cir.1984).

■ We find that the affidavits were cumulative of the tremendous quantity of evidence introduced of appellant's good character and meaningfulness. Prohibiting the needless presentation of cumulative evidence is proper. 12 O.S.1981, § 2403. The mitigating evidence herein was not exclusive to the particular affiants as was the testimony offered by certain witnesses which was held to have been improperly excluded in *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and *Green v. Georgia*, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979). Its exclusion was not error.

### XIII

■ Appellant next contends the trial court erred in allowing rebuttal evidence to be introduced that he had stabbed another student while attending John Marshall High School. During the sentencing stage of trial, appellant's brother, Sam Fox, Jr., testified that he knew appellant could not be guilty of the crimes in question because he was never violent even when he argued with others. The trial judge then ruled that the State could introduce testimony on rebuttal of the stabbing incident. The evidence was that while he was attending high school, appellant had a conflict of a racial nature with some other boys. He searched for a knife and then stabbed one of them. Title 12 O.S.1981, § 2404(A) provides:

Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except

1. Evidence of a pertinent trait of his character offered by an accused or by the prosecution to rebut the same; ....

*See Brodbent v. State*, 700 P.2d 1021, 1022 (Okla.Crim.App.1985). Appellant's contention that this evidence caused him to receive the death penalty by ambush is meritless. Prior to trial he made a motion in

limine to exclude evidence of the prior assault. He was well aware of the evidence and the risk that it might be introduced against him.

### XIV

██ Appellant asserts that the jury could not give him particularized consideration in assessing the death penalty because he was tried jointly with codefendant Fowler at the sentencing stage. This is especially so, he argues, since Fowler had prior convictions for a violent felony. The constitutional requirement for particularized consideration of an individual's character and circumstances before the death penalty may be meted out does not necessitate a separate sentencing hearing for codefendants. *See Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). Indeed, the jury was instructed to consider each defendant individually.

Besides being instructed of the basic definition of "mitigating circumstances," the jury was given a list of some thirty specific factors which could be considered in mitigation of Fox's guilt. Fowler's list of mitigating factors was separate and much briefer than appellant's. We have no reason to believe that the jury did not sentence appellant on an individual basis.

### XV

In his fifteenth assignment, appellant contends that his constitutional rights were violated because the trial court's instructions concerning sentencing were inadequate in several facets. Only one consideration is supported by authority.

The one issue which appellant supports with authority is that the jury was not advised they could give him a life sentence even if they found the mitigating circumstances were outweighed by aggravating factors. The authority he offers is from other jurisdictions and is unpersuasive to overrule this Court's prior holding denying the same contentions. In *Walker v. State,* 723 P.2d 273, 284 (Okla.Crim.App.1986) *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1987), we held:

'Jury nullification' is the jury's exercise of its inherent 'power to bring in a verdict [of acquittal], in the teeth of both law and facts.' *Horning v. District of Columbia,* 254 U.S. 135, 138, 41 S.Ct. 53, 54, 65 L.Ed. 185 (1920). In capital cases, an instruction on this issue would inform the jury of its right to return a sentence of life no matter how great the weight of evidence supporting the circumstances. However, the courts have almost uniformly held that a criminal defendant is not entitled to such an instruction. *See, e.g., United States v. Wiley,* 503 F.2d 106, 107 n. 4 (8th Cir.1974). *But see Washington v. Watkins,* 655 F.2d 1346, 1374 n. 54 (5th Cir.1981). The rationale for this majority view is eloquently explained in *United States v. Dougherty,* 473 F.2d 1113, 1130–37 (D.C.Cir.1972). Although a trial judge may, in the exercise of his sound discretion, give such an instruction, it is not error for him to refuse the request.

We note that besides giving the jury the Uniform Jury Instructions concerning sentencing, the trial judge additionally advised them that: "If you do unanimously find one or more of these aggravating circumstances existed beyond a reasonable doubt and fail to find anything in mitigation, you may impose a sentence of death or life imprisonment." (O.R.201).

Appellant also claims that the trial court's instructions were deficient in directing the jury "to consider all factors, not just aggravating factors." He also asserts that the instructions failed to place the burden on the State to prove that the mitigating factors did not outweigh the aggravating circumstances and failed to explain that standard of proof.

██ We disagree with appellant's contentions. While it is true that the State must prove the existence of at least one aggravating circumstance beyond a reasonable doubt before the jury is authorized to consider the death penalty, 21 O.S.1981, § 701.11, there is no specific standard constitutionally required for weighing mitigating against aggravating circumstances. *See Zant v. Stephens,* 462 U.S. 862, 103

S.Ct. 2733, 77 L.Ed.2d 235 (1983); *Brogie v. State*, 695 P.2d 538, 543 (Okla.Crim.App. 1985). We have previously rejected a standard which would require the State to prove beyond a reasonable doubt that aggravating circumstances outweigh mitigating circumstances. *Johnson v. State*, 731 P.2d 993, 1004 (Okla.Crim.App.1987). The jury herein was properly instructed of the State's burden of proof and of their duty to weigh the countervailing circumstances and to determine the appropriate sentence. This assignment is without merit.

## XVI

■ Title 21 O.S.1981, § 701.11, provides that in case the jury cannot reach a unanimous decision concerning punishment in a capital case within a reasonable time, the judge shall impose a life sentence. Appellant requests this Court to reconsider its prior holding that the jury does not need to be instructed concerning this rule of law. *E.g., Johnson v. State*, 731 P.2d 993, 1005 (Okla.Crim.App.1987). However, we remain convinced that the jury should not be concerned with the trial court's supervisory role. Such an instruction could improperly distract the jury from performing its duty of assessing the sentence.

## XVII

■ Appellant asserts that the trial court committed fundamental error by not instructing the jury that there exists a " 'presumption of life' which guarantees a person convicted of murder the right to live incarcerated for life unless the prosecution demonstrates beyond ́ a reasonable doubt that death is the only appropriate penalty for the defendant." Appellant neither requested this specific instruction, *Childs v. State*, 744 P.2d 567, 568 (Okla.Crim.App. 1987), nor now cites relevant authority in support of it. The cases he offers are those recognizing the presumption of innocence until proven guilty beyond a reasonable doubt. *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981); *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); and *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068,

25 L.Ed.2d 368 (1970). He did submit an instruction concerning a "presumption of mitigation" which the trial judge noted to have been given in substance. The instructions given concerning sentencing and legally recognized presumptions adequately advised the jury of the appropriate law. There is no error.

## XVIII

■ The jury was advised during the guilt stage of trial to not let sympathy, sentiment or prejudice play a part in their deliberations. They were instructed:

... From all the facts and circumstances appearing in evidence and coming to your observation during the trial, aided by the knowledge which you each possess in common with other persons, you will reach your conclusions. You should not let sympathy, sentiment or prejudice enter into your deliberations, but should discharge your duties as jurors impartially, conscientiously and faithfully under your oaths and return such verdict as the evidence warrants when measured by these instructions. (OUJI–CR 907).

During the sentencing stage, the trial court further instructed the jury that the first stage instructions applied where appropriate and were to be considered together with the supplemental instructions. Appellant contends that admonishing the jury against letting sympathy play a part in their deliberations prevented them from considering the full range of possible mitigating factors in violation of the Eighth and Fourteenth Amendments.

We do not believe that a reasonable juror could have understood the charge to mean that they could not consider all relevant mitigating circumstances, a constitutional failure expounded in *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion). The jury was also instructed that:

Mitigating circumstances are those which, in fairness and mercy, may be considered as extenuating or reducing the degree of moral culpability or blame.

The determination of what are mitigating circumstances is for you as jurors to resolve under the facts and circumstances of this case. (OUJI–CR 438).

Thirty potentially mitigating factors were listed by the court for the jury. Many encompassed aspects of appellant's personality or life that could not have been appreciated unless an element of sympathy was allowed. For example, the jury was instructed that evidence that appellant had been abandoned by his natural mother and that he had helped his sister by taking the blame for some of her actions could have been considered as mitigating circumstances by them.

What was prohibited by the instruction, and what would be understood by a reasonable juror as being prohibited were "emotional responses not rooted in the aggravating and mitigating evidence introduced during the penalty phase." *California v. Brown*, 479 U.S. 538, 542, 107 S.Ct. 837, 840, 93 L.Ed.2d 934, 940 (1987). Such a limitation promotes rather than offends the purpose in the Eighth Amendment to eliminate arbitrary and capricious action in sentencing. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). In *Johnson v. State*, 731 P.2d 993, 1004 (Okla. Crim.App.1987), we noted that if juries were allowed to be guided by sympathy in their deliberations in capital cases, it is a consideration likely to work to the disadvantage of the criminal defendants.

We also find the instruction given in this case to be distinguishable from the anti-sympathy instruction given in *Parks v. Brown*, 860 F.2d 1545 (10th Cir.1988). In *Parks*, the instruction provided in pertinent part: "You must avoid *any* influence of sympathy, sentiment, passion, prejudice *or other arbitrary factor* when imposing sentence." (emphasis added) The Court felt that the instruction carried with it the danger of leading the jury to ignore sympathy that is based on mitigating evidence. *Id.* at 1553.

Initially, it is obvious that Oklahoma Uniform Jury Instruction (Criminal) 907 does not contain the qualifier "any." Secondly, the phrase "or other arbitrary factor,"

which was present in the instruction in *Parks*, is not present in this instruction. We therefore find the Supreme Court's well-reasoned opinion in *Brown, supra*, to be controlling. In *Brown*, the Court stressed, "reading the instruction as a whole, as we must, it is no more than a catalog of the kind of factors that could improperly influence a juror's decision to vote for or against the death penalty. The doctrine of *noscitur a sociis* is based on common sense, and a rational juror could hardly hear this instruction without concluding that it was meant to confine the jury's deliberations to considerations arising from the evidence presented, both aggravating and mitigating." *See also Byrne v. Butler*, 847 F.2d 1135 (5th Cir. 1988). We also find no substantial possibility that a reasonable juror might have rested his or her verdict on an improper interpretation of the instruction. *Cf. Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). Finally, when reviewed as a whole, we find that the entire instructions delivered a correct interpretation of the law.

## XIX

■ Fox next urges that the trial court committed fundamental error in not defining the elements of the aggravating circumstance that the murders were committed for the purpose of avoiding or preventing a lawful arrest or prosecution. However, the instruction as given applied language commonly used and was easily understandable. No further definition was required. *See Liles v. State*, 702 P.2d 1025, 1031 (Okla.Crim.App.1985), *cert. denied*, 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986). Moreover, appellant failed to request or submit an instruction such as he now claims to be required and cannot be heard to complain on appeal of its absence. *Liles*, 702 P.2d at 1031. *Nuckols v. State*, 690 P.2d 463, 471 (Okla. Crim.App.1984), *cert. denied*, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985).

■ We disagree with appellant when he claims that the evidence presented at trial was insufficient to support a finding

of this aggravating circumstance's existence. The evidence was that he went to the store where he had been formerly employed intending to rob it. He had worked with one of the victims. The codefendants made no attempts to conceal their identities. One of the three victims was resting in an upstairs break room and was brought down to the store's back room where he was killed with the others. The robbery and homicides were executed in the early morning hours when no other customers were in the store or likely to arrive. The parts of the broken shotgun and the checks taken in the robbery were hidden in various locations. The codefendants rinsed their blood splattered clothes before returning to their homes. These factors taken together were sufficient circumstantial evidence that appellant killed with the intent of preventing a lawful arrest or prosecution. *Stouffer v. State*, 738 P.2d 1349, 1362 (Okla.Crim.App.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988) and *Moore v. State*, 736 P.2d 161, 165 (Okla.Crim.App.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 212, 98 L.Ed.2d 163 (1987). This assignment is without merit.

## XX

Appellant next reurges his fifteenth assignment of error that the jury should have been required to find beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors before a sentence of death could be imposed. Having fully answered this proposition above, we decline to address it again.

## XXI

Appellant claims that the aggravating circumstance that a murder is "especially heinous, atrocious, or cruel" is being applied in an arbitrary, and, therefore, unconstitutional manner. *See Cartwright v. Maynard*, 822 F.2d 1477 (10th Cir.1987); *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). In *Stouffer v. State*, 742 P.2d 562, 563 (Okla. Crim.App.1987) (Opinion on Rehearing), *cert. denied*, —— U.S. ——, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988), this Court specifical-

ly limited application of this aggravating circumstance to those murders which are preceded by torture or serious physical abuse. We find that this sufficiently narrowed the class of murders to which the circumstance could be applied. *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).

The jury in appellant's case was properly instructed on this point. We find that the evidence supports their finding of this aggravating circumstance as to the death of John Barrier. While two of the victims, Rick Cast and Chumpon Chaswasin, died from single gunshot wounds to the head, John Barrier was stabbed a number of times which, together with blunt force trauma to the head, caused his death. The shotgun used to shoot the others was used to bludgeon Barrier's head. So much force was used that the stock splintered and fell into a number of pieces and the barrel was bent. The evidence indicates that Barrier fought for his life because the stab wounds were located over various parts of his upper body, including defensive wounds on his hand. Furthermore, Fowler told officers that he heard Barrier cry out in pain and beg for his life. We find this to be adequate evidence that Barrier suffered serious physical abuse.

## XXII

Appellant contends that the aggravating circumstance set forth in 21 O.S. 1981, § 701.12(7) and found by the jury to be present in his case, that, "The existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society," is being applied in an unconstitutional manner and is not supported by the evidence. We have previously addressed the constitutionality of the application of this aggravating factor and held that it is not constitutionally infirm. *VanWoundenberg v. State*, 720 P.2d 328, 336 (Okla.Crim.App. 1986), *cert. denied*, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986), and *Liles v. State*, 702 P.2d 1025, 1031 (Okla.Crim.App. 1985), *cert. denied*, 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732. *See also Castro v.*

*State,* 745 P.2d 394, 407 (Okla.Crim.App. 1987) and *Walker v. State,* 723 P.2d 273, 285 (Okla.Crim.App.1986), *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986). We are unpersuaded by appellant's argument to the contrary.

We also find that there is sufficient evidence to support the jury's finding of this factor. As appellant notes in his brief, this Court has held that evidence of the murder itself will support a finding of this aggravating circumstance. *Liles, supra* (and cases cited therein). *Robison v. State,* 677 P.2d 1080, 1088 (Okla.Crim.App. 1984), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984); *Stafford v. State,* 665 P.2d 1205, 1217 (Okla.Crim.App. 1983), *vacated,* 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984), *affirmed on remand,* 700 P.2d 223 (Okla.Crim.App. 1985), *cert. denied,* 474 U.S. 865, 106 S.Ct. 188, 88 L.Ed.2d 157; *Ake v. State,* 663 P.2d 1, 11 (Okla.Crim.App.1983), *reversed on other grounds sub. nom., Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). These cases addressed the characteristic of callousness as reflected by a defendant's actions. Here too, there was evidence of callousness where appellant planned the robbery at least four days in advance. Weapons were specially obtained to carry out the crime. The three employees on duty were collected and moved to the backroom of the store where they were killed execution style, one brutally with numerous stabs to the body and blows to the head. After the codefendants secreted evidence and washed blood from their clothes, appellant went shopping and purchased clothing, earrings and drug paraphernalia.

As mentioned earlier, appellant had sought a knife and stabbed another student while attending high school. Although appellant did not have a history of arrests for violent assaults, such is not a prerequisite to a finding of this aggravating circumstance. This assignment lacks merit.

## XXIII

Appellant asserts that under the decisions of this Court, if one of the four aggravating circumstances found by the jury is not supported by the evidence his sentence must be modified to life. However, he relies upon the authority of cases previously reversed by this Court in *Stouffer v. State,* 742 P.2d 562, 563 (Okla.Crim. App.1987) (Opinion on Rehearing), *cert. denied,* — U.S. —, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). *See also Castro v. State,* 749 P.2d 1146, 1148 (Okla.Crim.App. 1987) (Opinion on Rehearing). Moreover, having found the circumstances properly supported by the evidence (see Proposition XXVI), this assignment is moot.

## XXIV

Appellant cites a number of comments made by the prosecutors during closing arguments and claims that he was denied a fair trial due to their interjection. The prosecutor stated during argument in the first stage that Fox began thinking about the robbery as early as February 15, 1985. We find this to be a reasonable inference from the evidence, since one witness testified that on that date Fox told him that he would get even with Wynn's I.G.A. for having fired him. *See Wacoche v. State,* 644 P.2d 568, 573 (Okla.Crim.App. 1982).

The next eleven comments of which appellant complains were made during the sentencing stage of trial. When objected to at trial, the trial judge overruled the defense. A review of the record reveals that some of the comments were unwarranted and not condoned by this Court. However, in light of the overwhelming evidence of appellant's guilt, we cannot say that the comments constitute fundamental error. *See Newbury v. State,* 695 P.2d 531, 537 (Okla.Crim.App.1985) and *Moore v. State,* 736 P.2d 161, 167 (Okla. Crim.App.1987).

## XXV

Finally, appellant contends that 21 O.S. Supp.1987, § 701.13(E)(2), which allows the trial court to resentence a defendant in a capital case if this Court finds error in the sentencing stage is unconstitutional. This

statute has no application to appellant's case because we have not found reversible error in his trial. Therefore, we find it unnecessary to discuss the constitutionality of the statute.

## XXVI

■ We further find, and the jury was so instructed,[4] that individualized consideration of appellant's culpability supports the jury's verdict of death. *See Hatch v. State,* 701 P.2d 1039, 1040 (Okla.Crim.App. 1985). We cannot say that appellant had no intention to kill or never contemplated that life would be taken, because he took the shotgun and shells from his roommate before going to the store. *Cf. Enmund v. Florida,* 458 U.S. 782, 801, 102 S.Ct. 3368, 3378, 73 L.Ed.2d 1140, 1154 (1982).

## XXVII

Pursuant to 21 O.S.Supp.1987, § 701.13, we have reviewed the evidence and verdicts and have determined that: (1) the sentences of death were not imposed under the influence of passion, prejudice, or any other arbitrary factor; and, (2) the evidence supports the jury's findings of the four aggravating circumstances charged, which were:

1) The defendant knowingly created a great risk of death to more than one person;

2) The murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution;

3) The existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and,

4) The murder of John Barrier was especially heinous, atrocious, or cruel.

Finding no error warranting reversal or modification, judgments and sentences are AFFIRMED.

PARKS, P.J., reserves vote.

4. The jury was instructed: "You must give separate consideration to the case of each individual defendant. Each defendant is entitled to have

LANE, V.P.J., and BRETT, J., concur.

LUMPKIN, J., specially concurs.

LUMPKIN, Judge, specially concurring:

I concur in the majority opinion and I write for the purpose of making additional comments regarding Appellant's Proposition of Error XVIII concerning the court's instruction to the jury that "sympathy, sentiment or prejudice" should not play a part in their deliberations.

This proposition of error is predicated upon the decision in *Parks v. Brown,* 860 F.2d 1545 (10th Cir.1988). The majority accurately determines that the United States Supreme Court decision in *California v. Brown,* 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987), is controlling on this issue. Judge Anderson, in his dissent in *Parks* to the majority's holding on the sympathy instruction, accurately and poignantly stated:

The majority opinion proceeds on the premise that the jury focused on the word 'any' in the sentence about passions, ignoring the words and sense of the sentence as a whole. Upon that very slight and hypertechnical premise the majority constructs large conclusions: that the instruction is unconstitutional on its face because it commands the jurors to denigrate mitigating circumstances evidence; that this general instruction overrides or otherwise nullifies the specific instructions on mitigating circumstances, as well as other specific instructions; and that *California v. Brown,* 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987), does not apply since the instruction there used the word 'mere' preceding the enumerated emotions.

The majority misconcieves the sense of the instruction: A reasonable juror would not stop part way through the sentence and question (at 'any ... sympathy') as the majority presumes. The sentence by its express terms refers to

his case decided on the basis of the evidence and the law which is applicable to him." (O.R. 180).

*arbitrary factors* ('any influence of sympathy, sentiment, passion, prejudice, or *other arbitrary* factor'). Thus, it sensibly cautions the jury against imposing sentence simply on the basis of arbitrary emotions. That is not qualitatively different from the meaning imparted by the instructions in *Brown.* In *Brown* the jury was directed not to divorce its considerations from the evidence and render an essentially whimsical decision based on mere sympathy. Here, the same directive is couched in terms of any *arbitrary* sympathy.

The context in which the sentence appears makes that clear. The next sentence in the instruction stresses impartiality. The preceding sentences state flatly that the jurors alone are the judges of the facts and that 'the *importance* and *worth* of the evidence is for you to determine.'

860 F.2d at 1566.

The very foundation of our judicial system is that jurors should return a verdict based solely upon the evidence presented during the trial and the law given to them through the instructions as apply to that particular case, and that they not be influenced by outside knowledge, belief or emotion. In this case the jurors were instructed during the guilt phase of the trial that they should not allow their decision to be based upon any emotion or other arbitrary factor. During the penalty phase of the trial the jurors were specifically instructed to weigh aggravating and mitigating circumstances in determining the appropriate punishment. I concur with Judge Anderson in his analysis in *Parks* that the instructions must be viewed as a whole in light of what a reasonable juror would perceive. It is not proper to focus on an isolated word and apply it in a very exaggerated and hypertechnical manner.

**PARKS, Presiding Judge, concurring in part, dissenting in part:**

I concur in the affirmance of appellant's conviction; however, with regard to the improper "expert" opinion given by Ms. Joyce Gilchrist, I continue to adhere to the views expressed in my opinion in *McCarty v. State,* 765 P.2d 1215, 1219 (Okla.Crim. App.1988). I cannot join the majority opinion to the extent it seems to place the burden upon the defendant to impeach improper expert opinions by State witnesses through the use of expert witnesses for the defense. *Majority,* at 570. Nonetheless, on this record, I agree that *McCarty* is distinguishable and that no reversible error occurred.

Furthermore, where, as here, the defendant has offered evidence of mitigating circumstances, it is unnecessary and confusing to the jury to give the so-called "anti-sympathy" instruction during the second stage as evidenced by the recent split of authority between the Tenth Circuit in *Parks v. Brown,* 860 F.2d 1545, 1552–59 (10th Cir.1988), and the Fifth Circuit in *Byrne v. Butler,* 847 F.2d 1135, 1139–40 (5th Cir.1988). While I agree it is improper to focus on the use of the words "any" or "mere" I find that the use of an "anti-sympathy" instruction in the second stage, where mitigating evidence has been introduced, improperly undermines the jury's consideration of mitigating evidence in violation of the Eighth Amendment. *See Parks,* 860 F.2d at 1553. I also continue to adhere to the views expressed in my special concurrence in *Foster v. State,* 779 P.2d 591 (Okla.Crim.App.1989), regarding the validity of the heinous, atrocious or cruel aggravating circumstance; however, I yield to the majority view as a matter of *stare decisis.*

Therefore, because I find the "anti-sympathy" instruction improper in the second stage, I would vacate the death sentence and remand for resentencing under the majority view enunciated in *Cartwright v. State,* 778 P.2d 479 (Okla.Crim.App.1989).