William Thomas
**CARTWRIGHT, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. PC–85–594.**

Court of Criminal Appeals of Oklahoma.

Oct. 23, 1985.

---

## ORDER DENYING APPLICATION FOR POST–CONVICTION RELIEF AND AFFIRMING DEATH SENTENCE

PARKS, Presiding Judge.

The petitioner, William Thomas Cartwright, has appealed from the denial on August 22, 1985, of post-conviction relief by the District Court of Muskogee County in Case No. CRF–82–192. We affirm the district court's denial of post-conviction relief, and affirm the sentence of death.

On October 25, 1982, the petitioner was sentenced to death by lethal drug injection for the offense of Murder in the First Degree, and on November 12, 1982, he was sentenced to seventy-five years' imprisonment for the offense of Shooting With Intent to Kill. After an appeal to this Court, we affirmed the convictions and sentences, *Cartwright v. State*, 695 P.2d 548 (Okl.Cr. 1985), and the Supreme Court of the United States denied the petition for writ of certiorari, *Cartwright v. Oklahoma*, —— U.S. ——, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985).

The petitioner raises thirteen assignments of error, ten of which the district court ruled were raised, or could have been raised on direct appeal. We have consistently held that 22 O.S.1981, § 1086 bars the assertion of alleged errors which could have been raised on direct appeal, but were not. *Ellington v. Crisp*, 547 P.2d 391 (Okl. Cr.1976). Therefore, we will not address those assignments of error.

Two assignments of error were raised twice, using different methods to present them. Those assignments of error are (1) that trial counsel was ineffective, and (2) that the trial court erred in failing to appoint a psychiatrist or psychologist to examine the petitioner when defense counsel requested psychological evaluation. In his first method of raising these issues he asserts that they should have been raised on direct appeal, and that failure to do so, resulted in ineffective assistance of *appellate* counsel.

■ The Supreme Court of the United States has held that, "A first appeal as of right ... is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney." *Evitts v. Lucey*, 469 U.S. ——, ——, 105 S.Ct. 830, 836, 83 L.Ed.2d 821, 830 (1985). The Court stated that appellate counsel must be available to assist in preparing and submitting a brief to the appellate court, and must play the role of an active advocate, rather than a mere friend of the court assisting in a detached evaluation of the appellant's claim. Counsel is not required to advance every argument,

regardless of merit. *See Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

■ The fact that petitioner's appellate counsel did not raise the two assignments of error which we noted, does not lead to the conclusion that he was ineffective. The basic test for ineffectiveness of trial counsel is: "Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–693 (1984). The proper standard as set forth in that case is "reasonably effective assistance." It further speaks of the necessity of a reviewing court indulging "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." These same standards are applicable to appellate counsel.

The petitioner in his direct appeal was represented by the Appellate Public Defender, who submits nearly sixty percent of the cases reviewed by this Court. To hold that appellate counsel should brief every nonfrivolous issue raised in a case would obviously greatly increase the workload of both the Appellate Public Defender, the office of Attorney General, who must answer the issues raised, and this Court, which examines each issue. Furthermore, it would tend to lessen the effectiveness of the briefs. Chief Justice Burger, speaking for the majority in *Jones* quoted Justice Jackson, who after observing appellate advocates for many years, stated:

> Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one.... [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one. Jackson, *Advocacy Before the Supreme Court*, 25 Temple L.Q. 115, 119 (1951).

*Jones*, 463 U.S. at 752, 103 S.Ct. at 3313, 77 L.Ed.2d at 994.

The importance of carefully selecting legal issues is further emphasized in a recent Oklahoma Law Review article which specifically addresses the writing of effective briefs submitted to this Court:

> The appellate attorney must evaluate the possible legal issues in order to determine which issues are worth pursuing and which issues should be discarded. If he fails to winnow the strong issues from the weak, the attitude of the appellate court may well be anger because the attorney has failed to do his job and as a consequence is wasting the court's time with meaningless verbiage.

Kershen, *The Written Brief For Criminal Cases in Oklahoma*, 35 Okl.L.Rev. 499 (1982).

Having carefully reviewed the record, including the transcripts of the trial and the motions hearings, we find the allegation of ineffectiveness of appellate counsel to be without merit.

The two assignments of error mentioned previously are raised through a second method by asserting they are issues of constitutional dimension and thus are not subject to the waiver rule of 22 O.S.1981, § 1086. Whether a petitioner may assert constitutional issues at any time was addressed in *Jones v. State*, 704 P.2d 1138 (Okl.Cr.1985), where we held that we consider a constitutional argument, raised for the first time on application for post-conviction relief where the constitutional remedy was unavailable at trial or on direct appeal. In such a case a "sufficient reason" has been stated for the failure to present the issue on direct appeal. *Stewart v. State*, 495 P.2d 834 (Okl.Cr.1972).

■ Concerning the ineffective assistance of trial counsel argument, the record reveals that the petitioner submitted his

brief in 1983. On May 14, 1984, *Strickland, supra,* was handed down which set the constitutional standards for effective assistance of trial counsel. This Court held in *Collis v. State,* 685 P.2d 975 (Okl.Cr. 1984) that the standard laid down in *Strickland* was consistent with the standard this Court has used when determining whether a defendant was provided effective assistance of counsel. *See Johnson v. State,* 620 P.2d 1311 (Okl.Cr.1980). As this remedy was available at the time of direct appeal, petitioner has failed to state a sufficient reason for not raising the issue at that time. Therefore, we will not address it.

Concerning the trial court's refusal to appoint a psychiatrist or psychologist to aid the petitioner in developing the defense of insanity, we note that *Ake v. Oklahoma,* 470 U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), which addresses the issue of court appointed psychological assistance to indigent defendants, was decided subsequent to the submission of the direct appeal for decision. As this constitutional remedy was unavailable at trial, or during direct appeal, we shall address it. This remedy requires that:

> Under certain circumstances, the State may be obligated to provide an indigent defendant with access to competent psychiatric assistance in preparing his or her defense. [Citation omitted]. To trigger this process, the defendant must demonstrate 'to the trial judge that his sanity at the time of the offense is to be a significant factor at trial....' [*Ake*] at ——, 105 S.Ct. at 1092, 84 L.Ed.2d at 60.

*Liles v. State,* 702 P.2d 1025, 1033 (Okl.Cr. 1985).

We find that the petitioner failed to make such a demonstration. In *Ake,* the Supreme Court applied the standards discussed in its decision to the facts, and concluded that Ake's sanity was likely to be a significant factor in his defense:

> For one, Ake's sole defense was that of insanity. Second, Ake's behavior at arraignment just four months after the offense, was so bizarre as to prompt the trial judge, *sua sponte,* to have him ex-

amined for competency. Third, a state psychiatrist shortly thereafter found Ake to be incompetent to stand trial, and suggested that he be committed. Fourth, when he was found to be competent six weeks later, it was only on the condition that he be sedated with large doses of Thorazine three times a day, during trial. Fifth, the psychiatrists who examined Ake for competency described to the trial court the severity of Ake's mental illness less than six months after the offense in question, and suggested that his mental illness might have begun many years earlier. Ap. 35. Finally, Oklahoma recognizes a defense of insanity, under which the initial burden of producing evidence falls on the defendant.

*Ake,* at ——, 105 S.Ct. at 1098, 84 L.Ed.2d at 68.

■ In contrast, the petitioner did not use the insanity defense, he did not display any bizarre behavior, an examination by the state psychiatrist showed that he was competent to stand trial and was able to assist in his defense, and finally stated that further observation was unnecessary. Although the petitioner complained of recurring blackouts, a physician who examined him three days after the crimes could not find anything abnormal even though his attention was specifically called to the "soft spot" on the petitioner's head alleged to be the reason the blackouts occurred. In his statement to the police, the petitioner first claimed to have experienced a blackout and was therefore unable to recall his last two days, but after further questioning he gave in detail the events during the crimes. These events were corroborated by the witness, Mrs. Riddle. In his testimony during the trial he first claimed that he had been hit on the head, and that he had no recollection of what happened for the next two days. On cross-examination he claimed he could not remember the statement which he made to the police which contradicted his testimony. On surrebuttal he changed his story, claimed that he gave the police a statement which he was instructed to give by his unknown

assailant about whom he had earlier testified. We find no merit to the petitioner's claims, and no merit to this assignment of error.

 Finally, the petitioner alleges that error was committed when the district judge who heard his petition, refused to continue the hearing and refused to disqualify himself from hearing the petition. An examination of the original petition and the hearing transcript reveals that no valid purpose could have been served by granting a continuance. The only proposition creating an issue of fact was whether Charma Riddle recanted her testimony that the petitioner was the person who had committed the crimes alleged. She was available and testified at the hearing, denying she ever recanted. Summary disposition of all the other issues was appropriate for the reasons we have stated. Furthermore, as the alleged prejudice resulting from the failure to disqualify is that petitioner's counsel was given insufficient time to prepare and present evidence, our finding that refusal to grant a continuance was proper, disposes of this matter as well.

IT IS THEREFORE THE ORDER OF THIS COURT that the district court's denial of post-conviction relief in the District Court of Muskogee County, Case No. CRF–82–192, should be, and the same is, AFFIRMED.

IT IS SO ORDERED.

WITNESS OUR HANDS AND THE SEAL OF THIS COURT this 23rd day of October, 1985.

ED PARKS, P.J.

TOM BRETT, J.

HEZ J. BUSSEY, J.