Walter Thomas BANKS, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-81-633.

Court of Criminal Appeals of Oklahoma.

Nov. 6, 1986.

498

Robert S. Lowery, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

On April 11, 1978, the appellant, Walter Thomas Banks, and his brother, Anthony Rozelle Banks, robbed a convenience store at the corner of 36th and Sheridan streets in Tulsa. Anthony shot and killed the clerk on duty, David Paul Fremin, while Walter stood watch outside. The two brothers were charged with First Degree Murder and were tried conjointly in Tulsa County District Court, Case No. CRF–79–3393, the Honorable Joe Jennings presiding. The jury found both defendants guilty as charged and sentenced Anthony to death by lethal injection; the sentence for Walter was life imprisonment. The death sentence for Anthony Banks has been affirmed. *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985). Walter Banks has perfected this appeal.

The murder case had been unresolved for many months when Anthony Banks, seeking leniency on an unrelated armed robbery charge, offered to give information on Fremin's murder. On November 7, 1979, Anthony gave a statement to an assistant district attorney for Tulsa County, which statement was tape-recorded and later played for the jury. In this statement Anthony said that he and the appellant, Walter Banks, were buying beer and snacks at the Git-N-Go store when a man named McClure entered the store with a gun, told them to leave, and then shot the clerk. McClure then, according to Anthony, left the store with a paper bag and the cash drawer and forced Walter and Anthony at gunpoint to give him a ride across town.

After Anthony gave this statement, the police made some progress with physical evidence left at the crime scene and identified a latent fingerprint as that of Anthony Banks. On November 9, 1979, appellant herein, Walter Banks, gave a statement corroborating Anthony's account of the murder. However, Walter said that McClure had been with him and Anthony all evening at a party and that McClure left the party with them when they took another friend home. The discrepancies between the two stories raised further police suspicions and soon police were able to locate Anthony's ex-wife, Traci Banks, who gave a much different account of the evening's events.

At trial Traci testified that she and appellant Walter Banks, his brother Anthony, Becky Moore and another man, were in Walter and Anthony's apartment in Tulsa. About three o'clock in the morning of April 11, 1978, Walter and Anthony left the apartment "to go do something." Anthony returned about 5:00 a.m. with a small brown box containing money, food stamps, and blank money orders. He also carried a man's wallet containing the driver's license of David Paul Fremin. Traci testified that as she helped Anthony count the money he told her that he and Walter had robbed the Git-N-Go store at 36th and Sheridan and that Walter had kept watch outside while Anthony killed the clerk.

Walter testified, however, that he and Anthony had left the apartment to take a

drunken friend home and that Anthony had expressed some regret that since he was unemployed he could not help Walter pay their rent. According to Walter, Anthony stated that he would have to "make a hustle" to come up with some money. Anthony dropped Walter off at the apartment of Walter's girlfriend and picked him up again about forty-five minutes later with a paper sack and a money drawer in the back seat. The two returned to their apartment, Walter taking time to park the car. When he entered the apartment Anthony and Traci were counting money. Thus, if believed, Walter's testimony would have placed him at his girlfriend's apartment at the time of the murder rather than with Anthony as Anthony stated.

The appellant first argues that he was prejudiced by the trial court's refusal to grant a severance so that he and his codefendant might be tried separately.

The record clearly shows, however, that the appellant withdrew his motion for severance and acquiesced to a joint trial. At a hearing on motions held on December 19, 1980, Walter Banks' attorney stated, "First, I would inform the court that my client Walter Banks requests that I withdraw our motion for severance." The trial judge then asked the appellant himself whether he wished to withdraw his motion for severance and the appellant responded affirmatively. The court then allowed the motion to be withdrawn. At a later hearing on February 9, 1981, the appellant again stated, through his attorney, his desire not to present a motion for severance. He did not reassert or present such a motion at any time thereafter and announced ready for trial at the outset of trial proceedings on February 17, 1981.

■■ The decision to grant or deny a motion for severance is within the sound discretion of the trial court, and this Court will not disturb such a ruling absent a showing of prejudice affecting a substantial right of the defendant. *Hightower v. State*, 672 P.2d 671, 677 (Okl.Cr.1983). In accordance with our decision in *Hightower*, we hold that where a defendant withdraws

his motion for severance from consideration by the trial court, he fails to properly preserve the severance issue for appellate review. The defendant failed to meet his burden of producing evidence to the trial court to show how he would be prejudiced by the joinder. *Id.* at 677. Moreover, on this record, we cannot say that the trial court abused its discretion in failing to grant a severance on its own motion. *Jones v. State*, 527 P.2d 169, 174 (Okl.Cr. 1974), *overruled on other grounds, Fulton v. State*, 541 P.2d 871, 872 (Okl.Cr.1975). This assignment of error is without merit.

Appellant further contends that the admission into evidence of his codefendant's taped confession violated his Sixth Amendment right to confrontation. U.S. Const. amend. VI. Initially, we note that appellant's counsel failed to properly preserve this issue with a timely and specific objection at trial. 12 O.S.1981, § 2104(A)(1).

■ Nevertheless, the United States Supreme Court has held that the Confrontation Clause is not violated by admitting out-of-court statements made by a codefendant so long as the codefendant testifies as a witness and is subject to full and effective cross-examination. *California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). Appellant's right of confrontation was satisfied when his independent counsel engaged in extensive cross-examination of Anthony at trial. *See Tennessee v. Street*, 471 U.S. 409, ——, 105 S.Ct. 2078, 2081–82, 85 L.Ed.2d 425 (1985). Recently, the United States Supreme Court has made it clear that the presumption of unreliability applicable to the confessions of codefendants is intended to protect the defendant when he is denied the benefits of cross-examination. *Lee v. Illinois*, —— U.S. ——, ——, 106 S.Ct. 2056, 2062–63, 90 L.Ed.2d 514 (1986). Therefore, on the record presented, appellant's right to confrontation was adequately preserved because Anthony testified at trial and was subject to full and effective cross-examination by appellant's independent counsel.

Likewise, the foregoing reasons demand that the same result applies to Traci Banks'

testimony regarding statements made to her by Anthony. The rule announced in *Bruton v. United States*, 391 U.S. 123, 136–37, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968), that limiting instructions are not sufficient to cure prejudice resulting from admitting into evidence a codefendant's extrajudicial confession implicating the defendant, when the codefendant refuses to testify and thus cannot be cross-examined, does not apply here. The reliability of the codefendant's statements was in fact tested by cross-examination.

Moreover, Anthony's so-called "confession" cannot easily be seen as a true confession because it does not directly incriminate either Anthony or the appellant as the perpetrator of the robbery or murder. *See Banks v. State*, 701 P.2d 418, 425 (Okl.Cr. 1985). Anthony's extrajudicial statements are circumstantially damaging to the appellant only to the extent that the jury disbelieved Anthony's claim that Billy McClure committed the robbery, but accepted as true Anthony's statement that the appellant was present at the scene of the murder, in spite of appellant's claim to have been at his girlfriend's apartment. Even so, we find that the truth-seeking process was reliable because the jury was aided by the benefit of cross-examination of Anthony by appellant's independent counsel. Additionally, the appellant was further protected from any unfair prejudice by the limiting instruction given by the trial court informing the jury not to consider Anthony's statements against the appellant. Hence, this assignment of error is without merit.

The appellant next asserts that the trial court committed reversible error in overruling his motion for directed verdict at the close of the State's evidence. We disagree.

■ In the present case the defendant presented evidence in his behalf after requesting a directed verdict. When, as here, a defendant goes forward with his own evidence, electing not to rely on his motion, he waives objection to the motion's being overruled. *Rudd v. State*, 649 P.2d 791, 794 (Okl.Cr.1982). This Court will then review the evidence of the entire trial, including the defendant's own, in determining the sufficiency of the evidence. *Rudd v. State*, 649 P.2d 791, 794 (Okl.Cr.1982).

■ Admittedly, the State's evidence against the appellant is circumstantial. When such is the case, the State's evidence need not exclude every possibility other than guilt but must merely exclude every reasonable hypothesis other than guilt. *White v. State*, 607 P.2d 713, 715 (Okl.Cr. 1980). This circumstantial evidence will be viewed in the light most favorable to the State. *Renfro v. State*, 607 P.2d 703, 705 (Okl.Cr.1980).

■ The evidence showed that about 3:00 a.m. on April 11, 1978, Anthony and Walter Banks left their apartment after discussing two convenience stores, including the Git-N-Go at 36th and Sheridan, during which discussion one of them said, "Let's go do something." When they left Walter was driving his girlfriend's car. Shortly after 3:00 a.m. that same morning the Git-N-Go store at 36th and Sheridan was robbed and David Fremin was killed. Anthony's finger print and palm print were left at the crime scene. The two men returned to their apartment around 5:00 a.m.; Anthony re-entered the apartment first, Walter having stayed behind to park the car. Walter, upon returning to the apartment, made a point of closing the door to his girlfriend's bedroom so that she would not overhear any subsequent discussions between him and Anthony and Traci. Anthony and Traci counted the proceeds of the robbery in Walter's presence. Finally, around 5:30 a.m. Anthony and Walter left the apartment together saying that they were going to the "northside" to dispose of certain items. We find this evidence sufficient to support the jury's verdict.

■ The appellant argues that some of the above mentioned statements were inadmissible against Walter as hearsay related by Traci Banks during her testimony. On the contrary, most of these facts were drawn from Walter's own testimony as well as from Traci's personal observation

as a witness. The only evidence arguably hearsay as to Walter were the statements "Let's go do something" and the later indication that Anthony and Walter were going to dispose of certain items. Neither statement was identified with a particular defendant, however. Either man may have made the statements and both men were present when each statement was made. We have previously held that where two or more persons have acted in concert in the commission of a crime, the acts and declarations of one coactor in pursuance of the common act or design are admissible against any other coactor on trial for the crime. *Roberts v. State,* 523 P.2d 1104, 1107 (Okl.Cr.1974). Thus, these statements were admissible against either defendant. The physical evidence linking Anthony to the crime scene was likewise admissible with regard to appellant Walter Banks. *See Cooper v. State,* 584 P.2d 234, 237 (Okl.Cr.1978).

In his fourth assignment of error the appellant argues that the information should have been quashed for insufficiency of evidence at preliminary hearing. Initially, we must note that the appellant cites no authority whatsoever in support of this contention. We have repeatedly held that we will not search the books for support for a proposition when such proposition is asserted with no citation of authority. *See Perez v. State,* 614 P.2d 1112, 1115 (Okl.Cr. 1980). We will then review the record for fundamental error only. We find no fundamental error and no merit in this assignment of error. As previously discussed, the evidence was sufficient to support the appellant's conviction; the same evidence was presented by the State at the preliminary hearing, which evidence certainly supported the Information. *See Wallace v. State,* 620 P.2d 410, 412 (Okl.Cr.1980).

The appellant next challenges the dismissal for cause of certain jurors during voir dire examination. He further argues that the process of jury selection in capital cases such as this "slants" the jury toward convicting the defendants and that such bias violates his right to a jury made up of a "fair cross-section" of the community and a jury that is impartial as guaranteed by the Sixth Amendment.

Recently, however, the United States Supreme Court rejected these arguments and held that the Sixth Amendment "fair cross-section" requirement is not violated when jurors are excluded either peremptorily or for cause in accordance with *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1170, 20 L.Ed.2d 776 (1968), and *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). *Lockhart v. McCree,* —— U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). Nor does the State's exercise of "for cause" objections or peremptory challenges necessarily result in juries that are conviction prone. Justice Rehnquist, writing for the majority in *Lockhart v. McCree,* —— U.S. ——, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986), noted that juries are not unconstitutionally "slanted" by the process of "death qualification" (that is, voir dire examination pursuant to *Witherspoon* ) since those same "death qualified" jurors might, "by the luck of the draw," have been impaneled in a separate noncapital criminal case without violating constitutional guarantees of impartiality.

The appellant would also argue that the dismissal of certain jurors for their inability to follow the law and consider imposing capital punishment violated the standards of *Witherspoon.* The appellant received a sentence of life imprisonment, however; therefore we will not consider whether certain jurors should have been allowed to remain on the jury. *Hogue v. State,* 652 P.2d 300, 302 (Okl.Cr.1982); *Rushing v. State,* 676 P.2d 842, 854 (Okl. Cr.1984).

The appellant next complains of having had to share his peremptory challenges with his codefendant. However, codefendants tried jointly are not entitled to individual challenges unless their defenses are inconsistent. 22 O.S.1981, § 655. We have found no substantial inconsistencies between the two defenses. It was therefore proper to have denied the appellant's request for nine separate peremptory chal-

lenges. *Master v. State,* 702 P.2d 375, 379 (Okl.Cr.1985).

 In his sixth assignment of error, the appellant urges reversal of his conviction based upon improper comments made by the prosecutor during voir dire examination. At that time the prosecutor referred repeatedly to the rights of the murder victim. We have repeatedly disapproved of such remarks and argument similarly designed. *See Tobler v. State,* 688 P.2d 350, 353 (Okl.Cr.1984); *Ward v. State,* 633 P.2d 757, 760 (Okl.Cr.1981). We do not find, in the light of the evidence, that these remarks were so prejudicial as to have affected the jury's verdict. *See Campbell v. State,* 636 P.2d 352, 357 (Okl.Cr.1983), *cert. denied,* 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983); *Sizemore v. State,* 499 P.2d 486, 488 (Okl.Cr.1972).

 In his seventh assignment of error the appellant contends that photographs of the crime scene and victim should not have been admitted into evidence. The admissibility of demonstrative evidence is within the discretion of the trial court, whose decision will not be disturbed absent an abuse of that discretion. *Assadollah v. State,* 632 P.2d 1215, 1217 (Okl. Cr.1981). The photographs involved herein depicted the crime scene, the position of the victim's body, the locations of the wounds on the body, and tended to support the testimony that the murder was committed during a robbery. We cannot say that these photographs were more prejudicial than probative. It was not an abuse of the trial court's discretion to admit the pictures into evidence. *Glidewell v. State,* 626 P.2d 1351, 1354 (Okl.Cr.1981). *See also Banks v. State,* 701 P.2d 418, 424–25 (Okl.Cr. 1985).

Finally, the appellant contends that the accumulation of errors at trial deprived the appellant of a fair trial. Apart from some improper remarks by prosecutors, we find no errors which might possibly accumulate. Therefore, this final assignment is without merit. *See Hawkes v. State,* 644 P.2d 111, 113 (Okl.Cr.1982).

Finding no error warranting modification or reversal, the judgment and sentence is AFFIRMED.

PARKS, P.J., concurs in results.

BUSSEY, J., specially concurring.