Anthony Rozelle BANKS, Petitioner,

v.

The STATE of Oklahoma, Respondent.

No. PC–89–1073.

Court of Criminal Appeals of Oklahoma.

April 19, 1991.

Jim T. Priest, McKinney, Stringer & Webster, Oklahoma City, for petitioner.

Robert H. Henry, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for respondent.

## OPINION

LANE, Vice–Presiding Judge:

Anthony Rozelle Banks, Petitioner, is before the Court on his second application for post-conviction relief. Petitioner was tried jointly with his brother Walter Thomas "Tony" Banks for the murder of David

Fremin, a clerk at a Tulsa Git–N–Go convenience store, and was sentenced to death in Tulsa County District Court, Case No. CRF–79–3393. Walter "Tony" Banks was sentenced to life imprisonment. This Court unanimously affirmed the petitioner's judgement and sentence in *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985), and that of his brother in *Banks v. State,* 728 P.2d 497 (Okl.Cr.1986). We affirmed the denial by the district court of petitioner's first application for post-conviction relief in PC–86–765 (unpublished order). Petitioner is now asking this Court to review the validity of his conviction and sentence for the third time.

The petitioner recognizes that he must establish ineffective assistance of appellate counsel in order for this Court to consider the bulk of his application for post-conviction relief. Absent ineffective assistance of counsel, seven (7) of the twenty nine (29) issues he raises herein are barred by *res judicata* for they were raised on direct appeal[1], *see Coleman v. State,* 693 P.2d 4 (Okl.Cr.1984); 22 O.S. 1981, § 1086. Nineteen (19) of the propositions would be waived for they could have been raised on appeal or on the first application for post-conviction relief[2]. *See* 22 O.S.1981, § 1086, *Smith v. State,* 546 P.2d 1351 (Okl.Cr.1976).

Ineffective assistance of appellate counsel, the second issue raised in the petitioner's brief is thus key to our consideration

1. Propositions III (prosecutor misconduct), VII (lack of control of prosecutor discretion in seeking death penalty), X (jury instruction could be construed to make death penalty mandatory), XXII (continuing threat aggravating circumstance unconstitutional as applied), XXIII (avoiding arrest aggravating circumstance unconstitutional), XXIV (trial court refused defense interrogation of jurors excused for inability to impose death), and XXV (Court of Criminal Appeals erred in using harmless error analysis of use of 1980 conviction in sentencing phase) were raised on direct appeal.

2. Propositions I (ineffective assistance of trial counsel), IV (prosecutor failed to disclose exculpatory evidence), V (jury instructions), VI (jury instructions), VIII (jury instructions), IX (jury selection), XII (prosecutor should have been disqualified), XIII (admission of fingerprint evi-

dence), XV (admission of statement), XVI (admission of statement), XVII (admission of statement), XVIII (admission of statement), XIX (admission of statement), XXI (jury instructions), XXVI (jury not precluded from considering pardon and parole), XXVII (sharing of peremptory challenges), and XXVIII (prosecutor failed to disclose reward and/or favorable treatment given to key witness) could have been raised on direct appeal. Proposition XX (incomplete appellate record) ordinarily should be raised, if at all, in the first application for post-conviction relief, and is waived if not so raised. However, in this case where appellate counsel also filed the first application for post-conviction relief, we find that it is unreasonable to impose the waiver doctrine. This issue is raised and addressed within petitioner's ineffective assistance of counsel argument.

of the majority of the petitioner's argument and will be addressed first. The petitioner alleges three categories of ineffective assistance of appellate counsel. He argues that the issues presented on appeal were poorly presented; that nine (9) critical issues were not raised; and that appellate counsel failed to investigate and raise four (4) critical issues not readily apparent from the record. His final argument in support of the allegation of ineffective assistance of counsel is that by representing both the petitioner and his brother on appeal, counsel's conflict of interest made him ineffective *per se*. We will address each of these arguments in the order presented.

■ An accused person is guaranteed assistance of counsel by both the state and federal constitutions. *See* Okla. Const. art. II, §§ 7 and 20, U.S. Const. amends. VI, and XIV. The Supreme Court explained in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) that unless the assistance counsel renders is reasonably effective, an accused is denied the constitutional guarantee of counsel. We recognized in *Cartwright v. State*, 708 P.2d 592 (Okl.Cr.1985) that the *Strickland* standard of reasonable effectiveness applies to both trial and appellate counsel. *Id.* at 594. We expressly hold that the standard of reasonable effectiveness applies to both trial and appellate counsel under the state constitution as well.

■ Addressing the appellant's first argument, we begin with the observation that it is undeniably true that some appellate briefs are written better than others. Those briefs submitted by both appellant and appellee which are well researched, accurate, concise, clear and to the point are of true benefit to the Court. Not all briefs rise to this level of excellence. However, a brief reaches the minimal level constitutionally acceptable if it sufficiently raises relevant issues for the Court to consider and address.

■ The petitioner does not claim the issues raised on direct appeal and in his first application for post-conviction relief were not fully considered by the Court. He simply argues that they could have

been more effectively presented. We find that the briefs submitted on direct appeal and in support of the first application for post-conviction relief were supported with relevant authority, and therefore were sufficient to raise the issues for our consideration. *See Tibbitts v. State*, 778 P.2d 925 (Okl.Cr.1989), *Guy v. State*, 778 P.2d 470 (Okl.Cr.1989).

■ Petitioner next presents nine (9) issues which were not raised previously and argues that appellate counsel's failure to raise these proves he was ineffective. The mere fact that counsel does not raise every nonfrivolous error on appeal is not necessarily evidence of ineffectiveness. In fact, in most cases this is persuasive evidence of effectiveness of appellate counsel. We made this point in *Cartwright v. State*, 708 P.2d at 594 by quoting Chief Justice Burger who, in writing for the majority in *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), quoted Justice Jackson:

> Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one ... [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one. Jackson, *Advocacy before the Supreme Court*, 25 Temple L.Q. 115, 119 (1951).

*Jones*, 463 U.S. at 752, 103 S.Ct. at 3313, 77 L.Ed.2d at 994. We brought the point closer to home in *Cartwright* with the following observation of Professor Kershen of the University of Oklahoma College of Law:

> The appellate attorney must evaluate the possible legal issues in order to determine which issues are worth pursuing and which issues should be discarded. If he fails to winnow the strong issues from the weak, the attitude of the appellate court may well be anger because the attorney has failed to do his job and as a

consequence is wasting the court's time with meaningless verbiage. Kershen, *The Written Brief for Criminal Cases in Oklahoma*, 35 Okl.L.Rev. 499 (1982). 708 P.2d at 594. Plainly, all nonfrivolous issues need not, and should not be raised in an effective appellate brief. However, failure to raise an issue warranting reversal, modification of sentence, or remand for resentencing may well prove counsel was ineffective. In order to determine if such is the case here, we have addressed each of the errors the petitioner asserts in support of his argument that appellate counsel was ineffective. In light of the fact that this is a capital case, we will set forth our analysis of each of the nine (9) issues raised.

■ Petitioner filed a motion to suppress his statement to the police in which he stated he witnessed the Fremin murder. When he reasserted the motion at trial, it was denied by the trial court. He did not raise the issue on appeal or in his first application for post-conviction relief, and argues now that it should have been raised. Petitioner argues that the statement should have been suppressed because it was made during the course of plea negotiations. While he was being held on the unrelated charges of burglary, two armed robberies and escape the petitioner sent word via the jailer to the district attorney that he had information regarding an unsolved homicide which he would like to discuss. Petitioner testified that "it is common knowledge in the jail system that if you have some knowledge of a crime that some deals can be made if you testify in another case; you can get leniency on what you are arrested for". The district attorney arranged to talk with him, and in the presence of the district attorney and two or three Tulsa police officers a tape recorded statement was taken. In that statement, which was played to the jury, the petitioner stated that Billy McClure entered the Git–N–Go while he and his brother were there, shot Fremin, and demanded at gunpoint that the petitioner give him a ride to the North side of Tulsa.

■ Under 12 O.S.1981, § 2410 an offer to plead guilty or *nolo contendere* to the crime charged or any other crime and statements related to these pleas are, with some exceptions not relevant here, inadmissible. The determinative question is therefore whether the petitioner made his statement in connection with and relevant to an offer to plead guilty or *nolo contendere.* This court has established a two-step analysis to determine this question. The statement is inadmissible if two (2) factors are present; the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, *and* this expectation was reasonable given the totality of the objective circumstances. *Gillum v. State*, 681 P.2d 87, 88 (Okl.Cr.1984).

The record does not support the petitioner's contention that he made his statement in conjunction with a plea of guilty or *nolo contendere* to any crime. Nowhere in the record does any evidence indicate the petitioner expected to negotiate a plea at the time he made his tape recorded statement. On this record we find that the petitioner made his statement with the subjective expectation of future benefit, but not in the course of plea negotiations as defined by *Gillum, Id.* Finding that the statement was not made during plea negotiations, we find that the trial court properly denied the petitioner's motion to suppress.

■ The petitioner argues for the third time that he should have been granted a severance. A severance is required when co-defendants assert mutually antagonistic defenses. *See Master v. State*, 702 P.2d 375 (Okl.Cr.1985); *Murray v. State*, 528 P.2d 739 (Okl.Cr.1974). Defenses which are inconsistent, in conflict or otherwise unreconcilable are not necessarily mutually antagonistic. Defenses are mutually antagonistic where each defendant tries to exculpate himself and inculpate the codefendant. *See Van Woundenberg v. State*, 720 P.2d 328 (Okl.Cr.1986).

■ In this case Walter "Tony" claimed he was not present at the time of the murder and the petitioner claimed that he and "Tony" were present, but a third party committed the murder. These statements are inconsistent, but they are not, by definition, mutually antagonistic. We rejected

this severance argument in the petitioner's appeal, *Banks,* 701 P.2d at 425, we rejected it in his brother's appeal, *Banks v. State,* 728 P.2d 497, we rejected it in the petitioner's first application for post-conviction relief, and we now again reject it as supporting the claim of ineffective assistance of appellate counsel.

■ Petitioner also raises the related issue of being forced to share peremptory challenges with his co-defendant. The Oklahoma legislature has determined that co-defendants will share their peremptory challenges when, as here, they do not assert mutually antagonistic defenses. *See* 22 O.S.1981, § 655. The Supreme Court recently determined that the federal guarantee of due process requires only that a defendant receive all the peremptory challenges allowed by state law. *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1987). We find that the due process clause of the state constitution likewise is satisfied when a defendant receives the peremptory challenges allowable by state law. *See Fox v. State,* 779 P.2d 562 (Okl.Cr.1989); *Fritz v. State,* 730 P.2d 535 (Okl.Cr.1986). In this case the petitioner received all the peremptory challenges allowable by state law and we find no error.

■ The petitioner next argues that the trial court improperly allowed the jury to take the petitioner's tape recorded statement into the jury room because the tape contained a second statement by the petitioner in which he states he witnessed another crime unrelated to the Fremin murder. At the preliminary hearing the prosecutor advised the judge of this fact. The State introduced only side-one into evidence at both the preliminary hearing and trial. At trial no mention of side-two was made and the tape of the relevant recorded statement was admitted into evidence over defense objection on other grounds.

Appellate counsel now speculates that the jury may have turned the tape over and listened to a statement which was not admitted into evidence. There is no suggestion in the record that the jury did this. We will not go behind the record and conduct appellate review of speculation as to what might have happened. This Court has held that tape recorded evidence may be taken by the jury into the jury room for deliberations. *See Duvall v. State,* 780 P.2d 1178 (Okl.Cr.1989). We find no error in the fact that the jury was allowed to take this tape in with them during their deliberations.

■ The petitioner next argues that the trial court should have prevented the prosecutor from impeaching his credibility using evidence of prior convictions. He relies on 12 O.S.1981, § 2609(A)(2). This Court has set forth detailed guidelines to assist the trial bench in determining the admissibility of evidence of former convictions for the purpose of impeachment. *See Cline v. State,* 782 P.2d 399 (Okl.Cr.1989); *Croney v. State,* 748 P.2d 34 (Okl.Cr.1987) (§ 2609(B)); *Robinson v. State,* 743 P.2d 1088 (Okl.Cr.1987) (§ 2609(A)(2)).

At his trial in 1981 the petitioner admitted on direct examination that he had a former conviction for armed robbery. On cross-examination the prosecutor brought out the facts that the petitioner had two convictions for robbery with firearms in 1973 and convictions for second degree burglary and armed robbery in 1980.

These convictions all involve stealing which is universally regarded as conduct which reflects adversely on a person's honesty and integrity. *See Cline,* 782 P.2d at 400. The evidence of these crimes was therefore admissible under 12 O.S.1981, § 2609(A)(2) without the trial court weighing the probative value against the prejudicial effect. *See Cline, supra; Robinson,* 743 P.2d at 1090.

■ Petitioner claims that appellate counsel should have argued that the prosecutor's office should have been disqualified from prosecuting his case because the chief prosecutor was a witness against him. In support of this argument petitioner relies on *Pease v. District Court,* 708 P.2d 800 (Colo.1985) which he cites as an Oklahoma case. The Colorado Supreme Court set forth the rule that the district attorney must be disqualified in a criminal case where he or a member of his staff will

appear as a witness and give testimony of sufficient consequence to prevent a fair trial. 708 P.2d at 802.

In the petitioner's case the chief prosecutor testified that the petitioner asked to speak to him and that the petitioner's statement was tape recorded. This testimony was simply a formality required for introduction of the tape into evidence. The chief prosecutor did not testify to any matter directly related to the determination of guilt or innocence. We find that this testimony, under the case the petitioner would have us follow, was not of sufficient consequence to require disqualification of the prosecutor's office.

 The appellant relies on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985) to argue that the trial court should have granted his motion for expert assistance. The appellant filed a motion eight days before trial requesting fourteen experts.[3] Trial counsel did not preserve the hearing on this motion for the record.

In *Ake* the Supreme Court held that the trial court shall appoint a psychiatrist or psychologist to assist with the defense when a defendant makes an *ex parte* preliminary showing to the trial judge that his sanity is likely to be a significant factor at trial. 470 U.S. at 83, 105 S.Ct. at 1096, 84 L.Ed.2d at 66. Neither the Supreme Court nor this Court has expanded the requirement of a court appointed expert beyond the *Ake* holding; although we left the

question open in *Standridge v. State*, 701 P.2d 761 (Okl.Cr.1985).

The petitioner did not make a preliminary showing that his sanity was to be a significant trial issue, so under *Ake* he was not entitled to a psychiatrist or psychologist to assist with his defense. He fails to demonstrate that without any of these requested experts, he was denied access to evidence which is material to either guilt or punishment, and he fails to show any tangible prejudice from the trial court denial of this motion. Although the petitioner contends the extremely damaging fingerprint evidence could have been discredited, if an expert had been provided, the record reveals that counsel thoroughly cross-examined the State's expert. We find the trial court properly denied this motion. *See Munson v. State*, 758 P.2d 324 (Okl.Cr. 1988), *cert. denied* 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1988); *VanWhite v. State*, 752 P.2d 814 (Okl.Cr.1988); *Johnson v. State*, 731 P.2d 993, 1007 (Okl.Cr.1987).

 The petitioner also argues that he should have been granted a continuance of his trial in order to "locate a critical defense witness". Petitioner does not refer us to the record to indicate when defense counsel made such a motion, and we do not find that the motion, if made, was preserved on the record. This argument, which was not raised at trial, is not properly before us and will not be addressed. *See Cartwright v. State*, 695 P.2d 548 (Okl.Cr. 1985) *cert. denied* 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985).

---

**3.** 1. a private medical expert to determine future dangerousness;
 2. a private fingerprint expert;
 3. a private expert to analyze fiber, tissue or body fluid evidence held by the state;
 4. a forensic pathologist to review the findings of the State;
 5. a criminal defense investigator to discover mitigating evidence, and to investigate the background of jurors;
 6. a qualified psychiatrist to determine sanity at the time of the offense as well as information regarding emotional or mental state at the time of the offense which could be used as mitigation evidence;
 7. a qualified criminologist to determine the position of each involved person at the scene of the crime;

 8. a qualified juristic psychologist to assist the defense with jury selection;
 9. a qualified juristic psychologist to support the defense motion for individual voir dire;
 10. an expert qualified to testify concerning the effect of death qualifying the jury;
 11. an expert qualified to testify to the deterrent effect of the death penalty;
 12. a ballistic expert;
 13. an expert to testify regarding whether the majority of the people in the community favor the death penalty;
 14. an educational testing specialist to testify regarding the defendant's "educational posture". (O.R. 89–91).

▆ Petitioner next relies on *Parks v. Brown,* 860 F.2d 1545 (10th Cir.1988) *cert. granted sub. nom.; Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) to challenge the jury instructions and claims the trial court violated the Eighth Amendment by instructing the jury that "it was not to allow sympathy to enter into its life and death deliberations". (Brief at 20.) The court instructed the jurors they were to avoid any influence of passion, prejudice or any other arbitrary factor when imposing sentence (Stage I) and that they should not allow sympathy, sentiment or prejudice to affect them in reaching their decision (Stage II).

The Supreme Court rejected this argument when it reversed the Tenth Circuit shortly after petitioner's brief was filed. The Supreme Court explained in *Saffle v. Parks:*

> We also reject Parks' contention that the anti-sympathy instruction runs afoul of Lockett and Eddings because jurors who react sympathetically to mitigating evidence may interpret the instruction as barring them from considering that evidence altogether. This argument misapprehends the distinction between allowing the jury to consider mitigating evidence and guiding their consideration. It is no doubt constitutionally permissible, if not constitutionally required, for the State to insist that "the individualized assessment of the appropriateness of the death penalty [be] a moral inquiry into the culpability of the defendant, and not an emotional response to mitigating evidence." Whether a juror feels sympathy for a capital defendant is more likely to depend on that juror's own emotions than on the actual evidence regarding the crime and the defendant. It would be very difficult to reconcile a rule allowing the fate of a defendant to turn on the vagaries of a particular jurors' emotional sensitivities with our long standing recognition that, above all, capital sentencing must be reliable, accurate, and nonarbitrary.

494 U.S. at ——, 110 S.Ct. at 1262, 108 L.Ed.2d at 427 (citations omitted). We agree with the reasoning of the Supreme Court in *Saffle v. Parks* and reject the petitioner's argument regarding both Stage I and Stage II instructions. We also find independently that the anti-sympathy instructions given in the petitioner's case do not violate the state constitutional prohibition against cruel and unusual punishment. *See* Okla. Const. art. II, § 9.

▆ We also reject the petitioner's contention that appellate counsel was ineffective for failing to argue that the trial court erred in failing to instruct on lesser included offenses. Petitioner claims the trial court should have instructed on the lesser included offenses of first degree manslaughter and second degree murder. Petitioner relies on *Nauni v. State,* 670 P.2d 126 (Okl.Cr.1983), and *Hanna v. State,* 560 P.2d 985 (Okl.Cr.1977) to argue that evidence of the petitioner's intoxication warrants these instructions. We disagree for the simple reason that the evidence by the petitioner's own testimony was that while he had been drinking beer the night and early morning prior to going to the Git–N–Go, he did not drink enough to become intoxicated. The evidence in the petitioner's case also established that the petitioner shot Fremin during an armed robbery from a range of less than two (2) feet while the petitioner was standing and Fremin was on his knees. There is no evidence whatsoever that the murder was committed in the heat of passion or without a design to effect death. The trial court properly did not instruct the jury *sua sponte* on matters not supported by the evidence. *Dilworth v. State,* 611 P.2d 256 (Okl.Cr. 1980).

▆ As his final argument regarding issues which were not raised but which are apparent from the record, the petitioner alleges that the "avoiding arrest" aggravating circumstance is vague and overbroad. Petitioner relies on *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) in which the Court found the jury instruction defining aggravating circumstance "heinous, atrocious and cruel", to be unconstitutionally vague and overbroad.

The trial court instructed the petitioner's jury:

> Based upon the facts of the case, the murder was committed for the purpose of avoiding and preventing a lawful arrest and prosecution. (O.R. 121)

The petitioner does not explain how the plain and ordinary language of this instruction is not understandable, or how it fails to properly limit the class of murderers eligible for the death penalty. We find that the meaning of the language is clear and that it properly channels the discretion of the jury. *See Fox v. State*, 779 P.2d 562 (Okl.Cr.1989); *Fowler v. State*, 779 P.2d 580 (Okl.Cr.1989); *Rojem v. State*, 753 P.2d 359 (Okl.Cr.1988), *cert. denied* 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988).

▆ The petitioner also raises four alleged errors in the investigation and preparation conducted by appellate counsel. He alleges that appellate counsel failed to include the jury instructions requested by the defense in the record on appeal. The petitioner does not explain how this error prejudiced him. This argument is particularly unpersuasive given the fact that no error regarding the denial of requested jury instructions was raised on appeal or in the first application for post-conviction relief. It is not mere error, but rather error which prejudices the petitioner which is grounds for remedial action by this Court. *See Quilliams v. State*, 779 P.2d 990 (Okl.Cr. 1989); *Washington v. State*, 568 P.2d 301 (Okl.Cr.1977).

▆ Petitioner next faults appellate counsel for failing to investigate evidence suggesting that Norman Lee Hicks or Billy James McClure were responsible for the Fremin murder. The petitioner does not give the Court the benefit of the "readily available" evidence which he claims exists. (Brief at 21). Our reading of the record does not support petitioner's bald assertion. The evidence indicates that the petitioner gave Hicks money orders taken from the Git–N–Go. The petitioner claimed to have found them in his car after he gave McClure a ride to north Tulsa. The petitioner gave the police the names of both McClure and Hicks in his statement and we

have no evidence before us to indicate that the Tulsa police failed to investigate these leads. The petitioner gives us no reason to believe that appellate counsel could have been more effective than the homicide unit of the Tulsa police department in developing evidence to establish McClure or Hicks and not Petitioner as the killer.

▆ Petitioner next asserts that his appellate counsel failed to investigate a conflict of interest which denied him effective assistance of trial counsel. Petitioner claims his appellate counsel should have argued that trial counsel, Les Earl, was ineffective *per se* due to a conflict of interest arising from the fact that he had previously represented Norman Hicks who had been charged earlier with the Fremin murder. Petitioner claims that Mr. Earl did not disclose or explain this fact to him. He speculates that Mr. Earl may have received information from Hicks which could have been favorable to his defense, but could not be disclosed due to his former attorney-client relationship with Hicks. The State relies on its position that petitioner waived this argument by failure to raise it on appeal, and does not specifically address this issue.

Hicks was arrested with money orders taken from the Git–N–Go in his possession. The charge against Hicks was ultimately changed from murder to possession of a forged instrument, and Hicks pled guilty to this charge. Mr. Earl was not representing Hicks at the time of the petitioner's trial, and Hicks was not called as a witness in the petitioner's trial.

The question of first impression before us is whether a conflict of interest necessarily arises where defense counsel has represented an individual who has a penal interest in the same matter for which the defendant stands trial when that individual is not called as a witness at trial. The right to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and by article II, sections 7 and 20 of the Oklahoma Constitution by definition contemplates counsel who is free from the limiting effects of any conflict of interest.

Counsel cannot be effective if conflicts of interest, no matter how subtle, dull the zeal of undivided loyalty. However, the mere appearance or possibility of a conflict of interest is not sufficient to cause reversal.

 This court has had few opportunities to address this question. On the two occasions which this Court has addressed a similar issue, we have relied on *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) to hold that when a contemporaneous objection is not made, an appellant must establish that an actual conflict of interest, and not the mere possibility of a conflict of interest, adversely affected defense counsel's performance in order to cause the reversal of a criminal conviction. Applying *Cuyler*, we have found no actual conflict where defense counsel represented persons who pled guilty to charges arising out of the same criminal episode as the appellant, and then became key prosecution witnesses against the appellant. *See Burnett v. State*, 760 P.2d 825 (Okl.Cr.1988); *Sheppard v. State*, 670 P.2d 604 (Okl.Cr.1983).

The language of *Burnett* and *Sheppard* may be interpreted to suggest a two-step analysis, a finding of conflict followed by a finding of harm. Without revisiting the holdings of these cases which is not required by the case at hand, we believe this should be clarified. If a conflict of interest exists, by definition defense counsel has been ineffective, and the petitioner need not make a showing of harm. A conflict of interest creates ineffective assistance *per se*. However, if only the appearance of conflict is present as a result of multiple representation, as in *Burnett* and *Sheppard*, then the petitioner must make a showing of actual harm in order to show ineffective assistance of counsel.

The present case differs significantly from *Burnett* and *Sheppard*. In each of those cases the client which defense counsel had represented became a key prosecution witness. In the present case, Hicks did not testify at the petitioner's trial. The risk that defense counsel could not represent the petitioner with undivided loyalty is therefore greatly reduced, though not wholly eliminated. The petitioner therefore presents a question of the appearance of a conflict of interest. The petitioner speculates as to ways in which the previous representation may have prejudiced him. However, the speculation is not supported by the record of the evidence presented at trial, or the development of the defense. Following *Burnett* and *Sheppard* we find that the petitioner has not met his burden under the federal constitution of showing actual harm caused to him by the appearance of a conflict of interest.

 As the Oklahoma Constitution also guarantees the petitioner effective assistance of counsel who is free from conflicts of interest, we must determine whether the state standard is also met. This court has not taken the opportunity previously to address this issue from the perspective of the state constitution. We find that the guarantee of effective assistance of counsel found in the state constitution is coextensive to that found in the constitution of the United States. There being no difference in the standard, at this time, we find no need to create a different analysis of the question under the state constitution. Applying the analysis set forth above, we find that the petitioner has also failed to carry his burden of showing harm under the state constitution. Appellate counsel did not err by failing to raise this argument on appeal.

 Petitioner alleges trial counsel failed to investigate readily available mitigating evidence and that appellate counsel erred by failing to raise this issue. The mitigating evidence which the petitioner sets forth involves the petitioner's good behavior during previous periods of incarceration. The failure to put on any mitigating evidence in the sentencing stage of a capital case is not, *per se*, a denial of effective assistance of counsel. *See Fisher v. State*, 736 P.2d 1003 (Okl.Cr.1987), *on reh.* 739 P.2d 523 (Okl.Cr.1987), *cert. denied* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1987), *reh. denied* 487 U.S. 1246, 109 S.Ct. 3, 101 L.Ed.2d 955 (1988); *Stafford v. State*, 669 P.2d 285 (Okl.Cr. 1983), *cert. denied* 473 U.S. 911, 105 S.Ct.

3537, 87 L.Ed.2d 660 (1984). The decision not to put on this mitigating evidence appears to be tactical in nature. Defense counsel attempted to minimize, rather than focus the jury's attention on the petitioner's substantial criminal record. The choice to pursue a reasonable, albeit ultimately unsuccessful trial tactic, does not subject trial counsel to a finding of ineffectiveness by this Court. *Jones v. State*, 781 P.2d 326 (Okl.Cr.1989).

 Neither the state nor federal constitutions differentiate between trial and appellate counsel when they guarantee the assistance of counsel to an accused. The analysis for determining whether appellate counsel operated under an impermissible conflict of interest because of multiple representations on appeal must therefore be the same for determining the conflicts of interest of trial counsel. *See Cartwright v. State*, 708 P.2d 592 (Okl.Cr.1985). In this case appellate counsel represented both the petitioner and his brother, Walter "Tony", on appeal. The representation certainly raises the appearance of conflict, and in some cases the representation of codefendants on appeal could create a *per se* conflict of interest. Petitioner argues that counsel's devotion to his brother caused counsel to argue his brother's case at his expense. These allegations are not borne out in the record. Nothing in the appellate brief for Walter "Tony" is mutually antagonistic to the position of the petitioner. Nor does either brief support the position of one of the appellants to the detriment of the other. We find that an appearance of conflict exists, but a conflict *per se* does not. The petitioner speculates that appellate counsel did not investigate "newly discovered evidence" yet presents no newly discovered evidence to support this position. Only conjecture supports the various scenarios which the petitioner sets forth. Conjecture does not carry the petitioner's burden to show actual harm caused him by appellate counsel's multiple representation.

After having considered each of the propositions which the petitioner raises to support his claim that appellate counsel was ineffective, we find that the representation by appellate counsel does not fall below the level of reasonably effective assistance guaranteed by the state and federal constitutions. We therefore will not address those propositions of error which were or could have been addressed on direct appeal or the first application for post-conviction relief, and which are therefore barred by *res judicata* or waived.

 The sole issue which properly remains before this Court is whether the trial court improperly denied the petitioner an evidentiary hearing on this application for post-conviction relief. The Oklahoma Legislature has provided that an evidentiary hearing on an application for post-conviction relief shall be held if the application cannot be disposed of on the pleadings and record, or there exists a material issue of fact. 22 O.S.1981, § 1084. We find that the issues raised could be fully addressed on the pleadings and the record. The petitioner has no constitutional right to an evidentiary hearing on an application for post-conviction relief, and the trial judge properly denied it. *See Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987).

Finding no error which requires modification or reversal the District Court Order denying post-conviction relief is AFFIRMED.

LUMPKIN, V.P.J., concurs in result.

BRETT and JOHNSON, JJ., concur.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring:

It continues to be the opinion of this writer that the ruling in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), "must necessarily be extended to include any expert which is 'necessary for an adequate defense.'" *Ake v. State*, 778 P.2d 460, 464 n. 1 (Okl.Cr.1989). Before a defendant is entitled to such assistance, however, he must first make the requisite showing of need. *Id.* In the present case, I agree with the majority that appellant has failed to demonstrate either that he was denied access to material evidence or

## 1298

that he suffered substantial prejudice from the lack of the requested experts. (Majority at 1293). Accordingly, I agree that the trial court did not err in denying the same.

Furthermore, I continue to view the so-called "anti-sympathy" instruction in the second stage unnecessary and confusing to the jury where mitigating evidence has been introduced. *See Fox v. State,* 779 P.2d 562, 579 (Okl.Cr.1989) (Parks, P.J., concurring in part/dissenting in part). However, I must yield my view to that of the majority of this Court as a matter of *stare decisis.*

LUMPKIN, Vice Presiding Judge, concurring in results.

I concur in the results reached by the Court in this case, and agree that all issues raised by Petitioner, except ineffective assistance of appellate counsel, are barred by the doctrine of res judicata or waiver. Therefore, the issues addressed by the Court are not determined on the merits but only as the law and facts relate to the sole issue of adequate representation by appellate counsel. I agree that Petitioner was not denied effective assistance of counsel and his petition must be denied.

I must continue to dissent to the Court's application of *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The Court continues to state that the decision in *Ake* requires an ex parte hearing for a defendant to make a showing that sanity at the time of the offense is to be a significant factor at trial and thus the need for an expert witness. *See McGregor v. State,* 754 P.2d 1216 (Okl.Cr.1988). However, the Court in *McGregor* relied not on the holding in *Ake* but merely an inference that an ex parte hearing is required when, in fact, the *Ake* decision did not set down that requirement. The Court in *Ake* held that when a defendant demonstrates that his sanity at the time of the offense is to be a significant factor at trial, the State must assure him access to a competent psychiatrist, but the Court did not mandate a procedure to determine that fact. The Oklahoma Legislature, in response to *Ake,* enacted 22 O.S.Supp.1985, § 464, subd. B and

§ 1176, to provide access to necessary expert witnesses. Neither of these statutory provisions require or infer an ex parte hearing. Absent a determination of the unconstitutionality of a statutory provision, we are bound to apply it. When reviewed in light of the overriding preference against ex parte hearings in our jurisprudence, these statutes cannot be interpreted to require, or even allow, ex parte hearings. I would therefore continue to urge this Court to overrule *McGregor* and apply the statutory provisions of 22 O.S.Supp. 1985, § 464, subd. B and § 1176.